**Richard Allen MOECK, Plaintiff,**

v.

**Insp. John ZAJACKOWSKI et al., Inspector Wausau, Wisconsin Police Dept., Defendant.**

**No. 70–C–224.**

United States District Court, W. D. Wisconsin.

Dec. 5, 1974.

David Walsh, of Walsh & Walsh, Madison, Wis., for plaintiff.

Anthony S. Earl, Wausau, Wis., for defendant, Zajackowski. James H. Peterson, and Robert D. Repasky, Asst. Attys. Gen., State of Wisconsin, for Warden Ramon L. Gray. Steven C. Underwood, Asst. U. S. Atty., Madison, Wis., and Frank Schimaneck, United States Marshal's Service, Washington, D. C., for United States Marshal for Western District of Wisconsin and United States Marshal for Eastern District of Wisconsin.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is an action for damages in which plaintiff alleges that he was deprived by the defendant of rights secured to the plaintiff by the Constitution of the United States, in that defendant, a city police officer, wrongfully disclosed to plaintiff's employer, a private enterprise, a record of plaintiff's juvenile offenses, and thus caused the private employer to discharge the plaintiff. Jurisdiction is present under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

The plaintiff is presently in the custody of the warden of the Wisconsin State Prison located at Waupun, Wisconsin, pursuant to a sentence imposed upon him by a state court. Plaintiff's confinement is unrelated to the controversy between him and the local police

officer. The warden of the prison has no part in the said controversy and is not a party to this lawsuit. No federal officer or agency is involved in it.

Trial in the lawsuit was scheduled for October 3, 1974, in the courtroom of this court at Madison, Wisconsin. On September 10, 1974, by direction of this court, the clerk of this court issued a writ of habeas corpus ad testificandum. It was addressed to the United States Marshal for this district, to the United States Marshal for the Eastern District of Wisconsin (within which district the Wisconsin State Prison is located), and to the warden. It directed that the plaintiff be brought to the courtroom at Madison on October 3, 1974.

On September 24, 1974, the warden moved for an order clarifying the writ, principally by making clear whether it was one or both of the federal marshals, or the warden, or all of them who were to be responsible for bringing the plaintiff to the Madison courtroom. In the alternative, the warden moved for an order discharging him from any obligation to bring the plaintiff to the Madison courtroom. On September 26, 1974, on its own motion, this court directed the warden to show cause why he should not be enjoined from preventing the plaintiff from being physically present in Madison for the trial of this case.

A hearing was had September 27, 1974, on the warden's motions and on the order to show cause. The Attorney General of Wisconsin appeared for the warden. The United States Attorney for this district appeared for the two marshals. In view of the positions taken by the warden and by the marshals, through their attorneys, it became clear that the issues could not be carefully resolved by this court, and that an opportunity for appellate review of the action of this court could not be had, even on an emergency basis, unless the trial scheduled for October 3, 1974, was deferred. When it proved impossible for me to decide the issues quickly, it became necessary to postpone the trial, successively, to No-

vember 13, 1974, to December 8, 1974, and, presently, to January 30, 1975.

It is to the warden's alternative motions and to the court's order to show cause that this opinion and order are directed.

Upon the basis of the entire record herein, I find as fact those matters set forth hereinafter under the heading "Facts."

### Facts

Upon the basis of the records of the legal proceedings against the plaintiff over a period of years, the warden has a reasonable basis to anticipate that, given an opportunity, plaintiff may attempt to escape from his custody. When an inmate of the state prison, such as plaintiff, is outside its walls, there is a significantly greater chance for escape than when the inmate is within the prison, unless considerable precautions are taken. In plaintiff's case, it is reasonable to provide two guards, as well as a driver of the automobile, to protect against plaintiff's escape if he were to travel from the state prison to the courtroom in Madison for the trial, and then to return. Also, during plaintiff's stay in Madison while the trial is in progress, to protect against escape, it is reasonable to confine him to the Dane County jail, located in the city of Madison, between court appearances and to provide two guards to accompany him as he moves between the jail and the courtroom.

The approximate distance between the state prison and the courtroom of this court in Madison, by automobile highway, is 53 miles.

The state funds made available to the warden, by legislative appropriation and by administrative allocation, are limited. Under present policies of the Division of Corrections, there are frequent occasions for travel outside the prison by inmates of the prison for such purposes as medical treatment, attendance at funerals of close relatives, and appearances in state courts for various reasons. The demands

of these trips upon available personnel are substantial, and they result in the use of personnel whose services are needed for other duties within the prison and in increased costs for overtime pay. The aggregate daily pay for two guards, without provision for overtime rates, is approximately $75 to $80.

■ I take judicial notice that in recent years hundreds of cases have been filed in this court by inmates of Wisconsin correctional institutions, many of whom are inmates of the Wisconsin State Prison, alleging that correctional officials have deprived them of rights secured to them by the Constitution of the United States, in violation of 42 U.S.C. § 1983. I take notice that more than 200 such cases are presently pending in this district. I take notice that in recent years a considerably smaller, but significant, number of cases have been filed in this court by inmates of Wisconsin correctional institutions, some of whom are inmates of the Wisconsin State Prison, in which the defendants are persons other than correctional officials and in which the subject matter is unrelated to the fact or conditions of plaintiff's confinement. I take notice that many such lawsuits (both § 1983-type, and others) are disposed of without the necessity for evidentiary hearings in the courtroom. However, I also take notice that it may reasonably be anticipated that a considerable number of such cases will require trials in the courtroom in Madison in the months and years ahead.

With respect to the warden of the Wisconsin state prison:

(a) In the absence of a valid order from a court (whether in the form of a writ of habeas corpus or otherwise), the warden will not permit an inmate to depart from the prison for a court appearance, whether at state expense or at federal expense or at his expense or the expense of some other party; whether or not he remains in custody while outside the prison; and whether, while outside the prison, he is in the custody of state officers or in the custody of federal officers.

(b) The warden will not contest an order of this court requiring him to transfer custody of an inmate at the prison to a United States Marshal for the purpose of transporting the inmate to this court for an appearance in this court in any kind of litigation, civil or criminal, and for the purpose of maintaining custody of the inmate until the inmate is returned to the prison, all at federal expense.

(c) The warden would and does contest an order of this court requiring him to bring an inmate to this court for an appearance in this court, at state expense.

(d) The warden would and does contest an order of this court restraining him from interfering with an inmate's ability physically to be present in this court, unless either federal funds or appropriate federal personnel are provided for the transportation and custody of the inmate during his absence from the prison.

Specifically, in the present case, unless required by a valid order of this court, the warden will not permit the plaintiff herein to be present in this court for the trial of his case, unless either federal funds or appropriate federal personnel are provided for the transportation and custody of plaintiff during his absence from the prison.

With respect to the United States Marshal for the Western District of Wisconsin and the United States Marshal for the Eastern District of Wisconsin:

(a) In the absence of a valid order from a court (whether in the form of a writ of habeas corpus or otherwise), the marshals will not take custody of an inmate of a state prison, whether at state expense or federal expense.

(b) The marshals would and do contest an order of this court requiring them, or either of them, at

federal expense, to take custody of an inmate of the state prison, at the prison, to transport him to this court for an appearance in a civil case, and to maintain custody of the inmate until he is returned to prison.

Specifically, in the present case, unless required by a valid order of this court, neither marshal will expend federal funds or assign federal personnel to go to the state prison, accept custody of the plaintiff there, transport him to this court for the trial of this case, and maintain custody of him until his return to the state prison at the conclusion of the trial.

Plaintiff desires to appear physically at the trial of this case, and, barring any other unforeseen circumstances, only his confinement in the state prison will prevent him from being present at the trial. Plaintiff is indigent and is unable to reimburse either the state or the federal government for the expenses involved in the transportation of the prisoner, in custody, from the prison to the court, and return, or for keeping the prisoner in custody during the time he is in Madison for the purpose of the trial.

Leave to commence this action was granted, and it was commenced, on August 14, 1970, and the dispute has since remained unresolved.

Earlier in the course of this case, defendant moved to dismiss for lack of subject matter jurisdiction and, alternatively, for failure to state a claim upon which relief can be granted. I denied these motions, observing that the "claim raises very difficult constitutional questions," and that "further development of the scanty factual record in this case may help clarify the issues."

Neither the complaint nor the answer herein alleges, and nothing else suggests, that there is any non-judicial mechanism, such as a compulsory arbitration agreement, available to the plaintiff to obtain monetary compensation for the alleged deprivation of rights secured to him by the Constitution of the United States.

*Opinion*

In Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), it was held that the state statutes requiring prospective plaintiffs in divorce actions to pay certain fees violated the due process clause of the Fourteenth Amendment. The Court emphasized that resort to the courts was the only means available to these prospective plaintiffs to liberate themselves from the constraints of legal obligations that go with marriage, particularly the prohibition against remarriage. 401 U.S. at 376, 91 S.Ct. at 780. The Court warned, however (at 382, 91 S.Ct. at 788): "We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship."

In United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Court upheld the constitutionality of federal statutes requiring the payment of filing fees as a condition to discharge in bankruptcy. It distinguished *Boddie,* principally on the grounds that the individual interests at stake in the marital relationship and in its dissolution are fundamental while the individual interests at stake in escaping financial obligations are not, and also that governmental control of the means of forming and dissolving marital relationships is more enveloping and pervasive than governmental control of debtor-creditor relationships. It concluded that the statutory bankruptcy fee requirements could survive constitutional challenge if a rational basis for them existed, and it found such a rational basis in a Congressional purpose to make the bankruptcy court system self-sustaining and paid for by those who use it.

In the present case, jurisdiction is present under 28 U.S.C. § 1343(3), and the cause of action is created by 42 U.S.

C. § 1983. Plaintiff alleges that defendant has deprived him of rights secured to him by the Constitution of the United States, and that plaintiff has suffered injury as a result. Defendant denies these allegations.

It is surely arguable that the plaintiff may fail in this lawsuit. When I observed earlier in the litigation that it raises "very difficult constitutional questions," I had in mind, among other questions, whether the federal constitution does secure to the plaintiff a right not to have his record of juvenile offenses disclosed to his private employer by a local police officer. Assuming that such a right is secured to the plaintiff by the federal constitution, it is surely arguable also that this constitutional right is not "fundamental" and that it occupies a relatively low position in the hierarchy of constitutional rights.

But I do not consider these latter considerations relevant to the issue at hand. The point is that only through the judicial process can one obtain an authoritative determination whether the "right" allegedly invaded is indeed a right secured by the federal constitution. If so, only through the judicial process can one obtain vindication of that federal constitutional right; only through the judicial process can a binding resolution of this type of conflict be achieved. See *Boddie*, 401 U.S. at 375, 91 S.Ct. at 780.

■ I consider that the due process clauses of the Fifth and Fourteenth Amendments guarantee persons access to a judicial determination of their federal constitutional rights and to judicial vindication of the rights. I consider that this right of access to a judicial determination is a fundamental individual interest.

■ In my view, when a fundamental individual interest is at stake, the court should allocate to the state officials who threaten to impair or deny that interest, the burden of showing a compelling governmental interest in the impairment or the denial. In my view, this allocation of the burden and this definition of the bur-

den should govern, whether or not the individual whose fundamental interest is threatened has been convicted of a crime, and whether or not the individual has been imprisoned as a result of the conviction. However, although access to a judicial determination of federal constitutional rights was not at stake in Morales v. Schmidt, 494 F.2d 85 (7th Cir. 1974), I will apply to the present issue the test there enunciated (at 87): the state must show on challenge that such restriction is related both reasonably and necessarily to the advancement of a justifiable purpose of imprisonment.

■ Here, the warden of the state prison makes no contention that prevention of plaintiff's attendance at the trial of this case in this court is related in any manner, whether reasonably or unreasonably, whether necessarily or unnecessarily, to the advancement of any purpose of imprisonment, whether justifiable or unjustifiable. Indeed, the warden objects in no way to the plaintiff's departure from the prison, travel to Madison, and attendance at the trial. From this, it is clear that, in the warden's view, no justifiable purpose of imprisonment will be served by preventing plaintiff from attending the trial of his case.

Under these circumstances, it is clear that the warden must be enjoined from interfering with plaintiff's attendance at the trial of his case.

In the approach I have taken, I consider it unnecessary to deal in detail with a number of points which have been discussed in the briefs and oral argument, but I feel an obligation to offer some comments on them.

■ I have concluded that it is not appropriate for this court to issue a writ of habeas corpus either to the warden or to one or both United States Marshals.

With respect to the warden, there is no occasion for this court to require him to deliver the body of the plaintiff to the courtroom. This is not the traditional situation in which a state prisoner is

seeking a federal writ for his release on the ground that he is in custody in violation of the United States Constitution. In such a case, it makes some sense to require the prisoner's keeper to deliver the body to the courtroom to permit a determination whether his very confinement by the keeper is lawful. No interest of the federal legislative, executive, or judicial branch requires anyone to deliver the plaintiff's body here. There is no showing that plaintiff has any desire or intention not to appear at the trial, if permitted by the warden to do so. But if the warden were to permit plaintiff to appear, free of custody, and if the plaintiff were to choose not to appear, his case in this court would simply be dismissed for want of prosecution.

With respect to the United States Marshal's Service, no interest of the federal legislative, executive, or judicial branch requires that a marshal take plaintiff into custody, and deliver his body to the courtroom, and maintain custody of the plaintiff during those portions of the trial days when the court is not actually in session. Plaintiff is not presently subject to arrest for a federal offense, so far as this record reveals. Nor is he a recalcitrant witness whose presence in this court is required for the protection of the interests of other persons. This is not the more familiar situation in which the executive branch of the federal government has initiated a criminal prosecution in a federal court against a person presently confined in a state prison. In such a case, it makes some sense for the court to require the federal officers to travel to the state prison, to take custody of the accused there, to deliver his body to this courtroom, and to preserve custody of the accused until the accused is returned to state custody at the prison.

Of course, the state has an interest in giving effect to the judgment of the state court which sentenced this plaintiff to imprisonment. To give effect to this interest, the warden is required by state law to take whatever measures may be necessary to prevent plaintiff's escape.

When the plaintiff is beyond the prison walls, whether for medical reasons or for appearances in a court or for other reasons, the prevention of his escape reasonably requires the expenditure of money and the allocation of personnel not required when he is within the prison walls. But it is an interest of the state, and no other interest, which requires such financial expenditures and such personnel allocation. Except for the state's interest in his continued confinement, no such expenditures or allocations would be necessary in connection with the plaintiff's exercise of his federal constitutional right of access to this court to obtain a binding resolution of his conflict with the defendant police officer.

It may be that Congress could constitutionally make provision for this situation, perhaps in keeping with some notion of comity, by making funds available to the states to cover the expense of effectuating the state interest in plaintiff's continued confinement, or even by making federal personnel available to effectuate the state's interest in plaintiff's continued confinement.

This is open to doubt, because no interest of the federal government is at stake. However, the question is academic, since Congress has made no such provision.

### Order

Upon the basis of the entire record herein, it is hereby ordered:

(1) that any and all writs of habeas corpus entered herein and addressed to the warden of the Wisconsin State Prison, or to the United States Marshal for the Western District of Wisconsin, or the United States Marshal for the Eastern District of Wisconsin, are hereby quashed;

(2) that Ramon L. Gray, Warden of the Wisconsin State Prison, and all persons acting as his agents or in concert with him, are hereby enjoined from interfering in any way with the presence of Richard Allen Moeck in the courtroom of

this court, in Madison, Wisconsin, at 9:00 a. m., January 30, 1975, and at such times thereafter as there may continue in progress the trial of the case of Richard Allen Moeck versus Inspector John Zajackowski, et al., 70–C–224.