**Stephen KESSLER, Plaintiff,**

v.

**Hoyt C. CUPP et al., Defendants.**

**Civ. No. 72–485.**

United States District Court,
D. Oregon.

·Nov. 15, 1973.

Order Dec. 5, 1973.

---

1. We have said that plaintiff alleges the contract signed by him in Greece is null. Such assertion seems to be adequate.

Stanley A. Sitnick, Legal Aid Service, Portland, Or., Jay Roth, Los Angeles, Cal., for plaintiff.

Al J. Laue, Asst. Atty. Gen., Salem, Or., for defendants.

## OPINION

· BURNS, District Judge:

For reasons set forth in my oral opinion on October 1, 1973, I advised counsel I intended to rule in Plaintiff's favor. In effect, I concluded, largely on the rationale advanced by Judge King in Park v. Thompson, 356 F.Supp. 783 (D.Haw., 1973) that I was not bound by the Ninth Circuit ruling in Hillen v. Director, 455 F.2d 510 (1972), and was free to follow the reasoning of Judges Solomon and Pettine in Capitan v. Cupp, 356 F.Supp. 302 (D.Or.1972) and Gomes v. Travisono, 353 F.Supp. 457 (D.R.I.1973).[1]

At my suggestion, the parties attempted to agree on a set of guidelines that should be incorporated in my order, describing the procedural due process requirements for non-consensual interstate transfers.[2] Despite sincere efforts by counsel, they were unable to agree.

I gave consideration to a simple order declaring Defendants' action in transferring plaintiff without a hearing to be unconstitutional and ordering a hearing that would meet due process requirements. However, I conclude that no such easy way out is either desirable or appropriate. Hence, I elaborate the minimum standards necessary to afford due process.

First, however, I reject the notion strenuously advanced by Defendants that it is necessary to describe transfers as "disciplinary" or "administrative"[3] and that a due process hearing is required only as to the former and not the latter. Gomes effectively disposes of this argument. The loss to the prisoner is equally grievous regardless of the label which the Warden pins on his own action.

Administration by label is as abhorrent as is jurisprudence by label—unjust results readily occur under either approach. Affixing a label to determine the outcome may well also mask or conceal the interests involved. An identification of those interests is vital if they are to be protected from grievous harm or loss. Consequently, all non-consensual interstate transfers, except for true emergencies, must be preceded by the notice and hearing spelled out below.

In a true emergency situation, for example, one in which the general security of the institution is immediately threatened, non-consensual interstate transfers may be allowed without a prior notice and hearing. However, where such a transfer occurs as a result of the determination by the Warden of the existence

---

1. Accord, Hoitt v. Vitek, 361 F.Supp. 1238 (D.N.H.1973) ; Ault v. Holmes, 369 F.Supp. 288 (W.D.Ky.1973) ; Heald v. Mullaney (S. D.Me.1973).

2. It was understood that Defendants would not thereby waive any objections previously entered or their right to appeal.

3. As shown in Gomes, 353 F.Supp. at 465, a third reason—"rehabilitation"—is sometimes advanced, and Judge Pettine enumerated due process safeguards for "rehabilitative" interstate transfers also, which appear to be sound and wise. But since such an issue is not involved here, I do not reach or speak to it.

of such an emergency, the transferred inmate must be returned to the institution for a hearing pursuant to the minimum standards set forth below as soon as the emergency has ceased to exist. Ordinarily, the Warden would face an unusually heavy burden to justify any period of time greater than thirty days for such return and hearing procedure. It should be crystal clear, however, that the determination of the institution-wide emergency situation is one which calls into play the informed expertise of the Superintendent or Warden. Courts cannot and should not "second guess" wardens on this score.

The following minimal due process standards, therefore, apply to a non-consensual interstate transfer in all but the emergency situations described above:

1. An inmate is entitled to written notice of the fact that a transfer is contemplated, coupled with a statement for the reason or reasons for the proposed transfer. The notice should inform the inmate of the time and place of the hearing, and of his rights with respect to the hearing. Three days notice must be given, unless the Warden concludes that compelling reasons exist for a shorter period of time. He may cut this time to one day, provided that the reasons for the shortening of the time are set forth in the notice.

2. A hearing must be held before an impartial hearing officer or board, which may be composed of institutional personnel. The hearing officer or members of the board may not, however, include persons who have participated in the investigation of the charges, or who have been involved in the decision to recommend a transfer.

3. The inmate is entitled to appear and speak in his own behalf at the hearing. He is also entitled to bring documentary evidence in support of his defense against the charge or against the transfer. He is also entitled to present witnesses, but the hearing officer or board has discretion to limit the number of witnesses that the inmate is entitled to call.

4. If the inmate requests, he is entitled to require the presence of persons who have given adverse information so that they may be made available for questioning in his presence.[4] However, if the hearing officer or board determines that good cause exists for not allowing confrontation by the inmate of certain adverse witnesses, such right shall not exist. (In such cases, the record must contain sufficient proof of the reliability of the absent or anonymous informant.)

5. The inmate shall be allowed the assistance of a lay advocate or representative of his own choosing in preparation for and at the hearing.[5]

6. A record of the hearing shall be made, the hearing officer or board must make written findings of fact upon which the determination is based, and a copy must be furnished to the inmate. Any decision to transfer must be based upon substantial evidence presented at the hearing.

7. There shall be an administrative review of the decision by an official appointed for such purposes within the corrections division.

8. In cases where inmates are so transferred, the superintendent or the corrections division shall periodically review the status of the transferee at least

---

4. The right or extent of "cross-examination" may be limited in some instances. In interpreting these and the other requirements contained in this order, the parties should be guided by the standards set forth in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), regarding the flexible authority of the hearing body to curb abuses of this process. See also, Colligan v. United States,

349 F.Supp. 1233 (E.D.Mich.1972); Bowers v. Smith, 353 F.Supp. 1339 (D.Vt.1972); and Nieves v. Oswald, 477 F.2d 1109 (2 Cir. 1973).

5. This provision is not intended to preclude the assistance of legal counsel or paralegal personnel if pursuant to ongoing programs within the correctional system they are available for such activity. This is not to be construed as establishing any absolute right to a lawyer as counsel in these matters.

once every four months to determine whether the transferred inmate should be returned.

9. Any transferred inmate is entitled to be returned for purposes of parole board hearings, unless the parole board makes suitable arrangements for the entire board to travel to the situs where the transferee is being kept. The transferred inmate is also entitled to be returned for court hearings, and such return must be made within a sufficient amount of time prior to the hearing to allow reasonable consultation with counsel.

As mentioned during earlier hearings, I decline to issue a stay order. I will, however, make the order effective twenty days after it is entered. This will permit Defendants to apply, if they wish, to the Court of Appeals for a stay. The record is already clear that Defendants have requested and been refused a stay of my ruling pending appeal. Plaintiff should submit an appropriate judgment order.

## ORDER AMENDING JUDGMENT

The Defendants' motion for relief from judgment and stay of proceedings is granted to the following extent, and the judgment and opinion upon which it is based is amended as follows:

1. Paragraph 9 of the Opinion shall read ". . . , unless the parole board makes suitable arrangements for *a quorum of the* board to travel to the situs . . . ."

2. Paragraph 9 shall be further modified to provide that the inmate be returned for court hearings in cases in which he is a party where his presence is required *and* in cases where he is needed to confer with counsel to prepare for legal proceedings in Oregon, upon the affidavit of counsel that such a return is necessary for adequate preparation.

3. With respect to Paragraph 5, it is *not* to be construed to mean that an inmate is allowed to choose a lay advocate or representative who is not then located within the institution or who is then in

segregation or isolation or the equivalent thereof.

The Court will retain jurisdiction to provide an opportunity for review of these provisions, in the event that abuses later become evident. If any abuses do appear, I will consider alternatives, including but not limited to a requirement that representatives are to be chosen from a list and the manner in which such a list may be composed.

The judgment originally signed and entered on November 21, 1973, was not to be effective until twenty days thereafter. That time is extended to and including the 28th day of December, 1973. This will insure ample time for Defendants to apply for a stay from the Court of Appeals.