514 F.2d 55
 Marvin Lee AIKENS et al., Plaintiffs-Appellees-Cross-Appellants,
v.
Russell E. LASH, Individually and as the Warden of the
Indiana State Prison, et al.,
Defendants-Appellants-Cross-Appellees.
 Nos. 74-1320 and 74-1328.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 21, 1975.
Decided April 7, 1975.
 
 Harold R. Berk, Russell E. Lovell, II, Indianapolis, Ind., John P. Forhan, South Bend, Ind., for Aikens.
 Theodore L. Sendak, Atty. Gen., Eugene M. Fife, III, Deputy Atty. Gen., Indianapolis, Ind., for Russell Lash.
 Before CUMMINGS and SPRECHER, Circuit Judges, and MARKEY, Chief Judge.*
 SPRECHER, Circuit Judge.
 
 
 1
 This appeal and cross-appeal arise from a district court decision granting in part and denying in part certain declaratory and injunctive relief requested by a class of prisoners at the Indiana State Prison.
 
 
 2
 * This action was brought by nine named plaintiffs all of whom were then inmates at the Indiana State Prison and had been transferred from the Indiana Reformatory. The district court ordered that the suit be maintained as a class action.[1]
 
 
 3
 The defendants were the Warden, Assistant Warden and Director of Classification at the Indiana State Prison at Michigan City (Prison), the Superintendent and Assistant Superintendent at the Indiana State Reformatory at Pendleton (Reformatory), and the Commissioner of the Indiana Department of Corrections.
 
 
 4
 The trial lasted ten days, and because many of the witnesses were prisoners or guards it was held in the visitor's lounge of the Prison Administration Building.
 
 
 5
 In an order dated February 8, 1974, the district judge ordered the following injunctive relief be granted:
 
 
 6
 (1) No inmate was to be transferred from the Reformatory[2] to the Prison[3] and confined in segregation at the "I" Cellhouse Detention Unit (I.D.U.)[4] upon his arrival (disciplinary transfer)[5] unless the following procedures were provided: (a) advance written notice, delivered at least two days prior to prisoner's hearing, of the fact that a disciplinary transfer was contemplated including a statement of reasons for the proposed transfer and the date and time of the hearing; (b) an impartial decision maker one or more Reformatory personnel other than individuals who had accused or investigated the behavior of the prisoner which formed the basis for the transfer proposal; (c) a fair opportunity for the inmate to be present during the hearing and to explain or refute accusations; (d) a fair opportunity to request that witnesses be called or interviewed in the presence of the inmate and that adverse witnesses be cross-examined unless the hearing officer or board determined that good cause existed to deny the right of confrontation, in which case the written record shall reflect sufficient proof of the reliability of the absent or anonymous informer and a statement of the reasons for denying confrontation;[6] (e) representaton by a lay advocate either institution personnel or another inmate not then in segregation; (f) a written statement of findings of fact and conclusions based on substantial evidence made available to the inmate; (g) an administrative review of the decision by the Commissioner of Corrections or his designate.
 
 
 7
 (2) The foregoing provisions for notice and hearing need not be provided in a true emergency situation where the general security of the transferring institution is immediately threatened. In such an unusual situation, the inmate may be transferred and then provided with the procedures outlined above within five days of his arrival at the transferee institution.
 
 
 8
 (3) All prisoners in segregation at the Prison who were there pursuant to a disciplinary transfer from the Reformatory were to be provided with a hearing conforming with the above requirements concerning the basis for their transfer.
 
 
 9
 (4) Inmates confined in a segregation unit at the Prison for an indefinite term were to be accorded a periodic review (at least every thirty days) of their segregated status conducted in an adversary setting conforming with the procedures outlined above.
 
 
 10
 (5) The Deputies Office-Seclusion Unit (D.O.) at the Prison was ordered closed, and all inmates were to be removed from that unit.[7]
 
 
 11
 (6) The inmates confined in segregation at the Prision were to be accorded access to an adequate law library either by bringing the inmate to the library or by bringing to the inmate and leaving for a reasonable period of time legal materials or photocopies thereof.
 
 
 12
 (7) Mail sent between attorneys and prisoners at the Prison was not to be opened, read, censored or copied, and its prompt delivery and transmission was not to be interfered with except if Prison officials have reasonable grounds to believe that a piece of attorney-client or client-attorney mail may contain contraband, then a Prison official may open such mail but only in the presence of the prisoner involved and without reading, censuring, copying, or further interfering with the delivery of the material.
 
 
 13
 Despite the fact that the district court disposed of a great many questions, the defendants have raised on appeal only a limited number of issues, and the plaintiffs have cross-appealed on one additional issue.[8]
 
 II
 
 14
 The defendants challenge certain procedures[9] ordered by the district judge to be part of the required disciplinary hearing prior to transferring an inmate from the Reformatory to the Prison.[10]
 
 
 15
 * The district judge ordered that an inmate who was the subject of a disciplinary transfer hearing is entitled as of right to representation by a lay advocate of his own choosing, either institution personnel or another inmate not then in segregation.
 
 
 16
 In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court refused to recognize an absolute right to counsel at prison disciplinary hearings. The Court said:
 
 
 17
 The insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals. . . . At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings. Id. at 570, 94 S.Ct. at 2981-82.
 
 The Court went on to say:
 
 18
 Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. Id. at 570, 94 S.Ct. at 2982.
 
 
 19
 The Supreme Court made clear that it was not only illiterate inmates who were entitled to lay counsel in a given situation, but also inmates faced with complex matters.
 
 
 20
 The Court's decision did not define what factors were to be considered in determining "the complexity of the issue." Nor have we been apprised by the State of Indiana of existing rules or procedures that would give effect to the Court's mandate. We note only that the complexity of an issue is often dependent on the amount of information available to a prisoner. It is conceivable that in many disciplinary transfer situations an inmate will already be confined in segregation, and thus unable to collect information. This will make his task of explaining his actions and defending himself all the more difficult. In these situations the inmate should be entitled to assistance in preparing and presenting his case.
 
 
 21
 On remand the district judge should modify his order in accordance with Wolff and the foregoing considerations.
 
 B
 
 22
 The next procedure challenged by defendants is the right of an inmate to cross-examine adverse witnesses during their disciplinary hearing unless the hearing officer determines that good cause exists to deny that right, in which case the written record should reflect the reasons for the denial.[11]
 
 
 23
 The Supreme Court in Wolff, after finding that an inmate should be allowed to call witnesses and present documentary evidence in his defense, stated that "(c)onfrontation and cross-examination present greater hazards to institutional interests." Wolff, supra at 567, 94 S.Ct. at 2980.[12]
 
 The Court said:
 
 24
 We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination.
 
 
 25
 The better course at this time, in a period where prison practices are diverse and somewhat experimental, is to leave these matters to the sound discretion of the officials of state prisons. Id. at 568, 94 S.Ct. at 2980, 2981.
 
 
 26
 Thus, while the Court rejected an absolute right to cross-examination, it left the matter to the discretion of prison officials. In interpreting this mandate the Court of Appeals for the Ninth Circuit held that in exercising this discretion, prison officials must upon request for a right to cross-examination enter into the record the reasons for the denial of the request. Clutchette v. Procunier, 510 F.2d 613 at 615-16 (9th Cir. 1974), petition for cert. filed, 43 U.S.L.W. 3517 (U.S. Mar. 20, 1975).
 
 
 27
 The concern of the Court in Wolff in not granting an absolute right of cross-examination was directed at unmanageability of the proceeding, disruption of prison routine, safety of prison personnel and possible reprisals against other inmates. Wolff, supra, 418 U.S. at 566-570, 94 S.Ct. at 2980-81. The Court recognized that there existed a "narrow range of cases where interest balancing may well dictate cross-examination . . . ." Id. at 569, 94 S.Ct. at 2981. But even in those cases the "courts will be faced with the assessment of prison officials as to the dangers involved, and there would be a limited basis for upsetting such judgments." Id.
 
 
 28
 However limited, the Court recognized in Wolff that at least in some circumstances, prison officials may be found to have abused their discretion if they deny a request for the right of cross-examination for entirely arbitrary reasons. As the Ninth Circuit found in Clutchette, the only way the soundness of the discretion exercised can be subject to scrutiny is a requirement that any refusal to allow cross-examination when requested be accompanied by a written record of the reasons for the refusal.
 
 
 29
 Since Wolff makes clear that the district judge's order cannot stand in its present form, it is remanded with directions to modify the order in light of Wolff and this opinion.
 
 C
 
 30
 The district court ordered that a written statement of findings of fact and conclusions based on substantial evidence be made available to inmates following their disciplinary transfer hearings. The defendants challenge the "substantial evidence" requirement on the grounds that prison officials are not lawyers and should not be subjected to such a vigorous standard.
 
 
 31
 Wolff, although not precisely on point, relied on Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) when it said:
 
 
 32
 (T)here must be a "written statement by the factfinders as to the evidence relied on and reasons" for the disciplinary action. Wolff, supra at 564, 94 S.Ct. at 2979.
 
 
 33
 The reason for this requirement was simple. The Court recognized that the ultimate conclusions of a disciplinary hearing, as indicated by whether the prisoner was found guilty or not of the charges, would likely be considered in subsequent matters such as prison transfer proceedings or parole proceedings.[13]
 
 
 34
 As a practical matter, we fail to see the conflict defendants note between the term "substantial evidence" and the phrase "evidence relied on and reasons for the disciplinary action." Presumably, the Supreme Court did not contemplate in Wolff, where its use of the latter phrase in connection with the array of procedural rights provided was directed at protecting prisoners from subsequent collateral consequences, that these rights should be easily emasculated by allowing prison officials to infringe arbitrarily on an inmate's substantive due process right not to be found guilty except by an appropriate quantum of evidence. See, e.g., Gomes v. Travisono, 510 F.2d 537, 540 (1st Cir., 1974); Wilwording v. Swenson, 502 F.2d 844, 851 (8th Cir. 1974).
 
 
 35
 The term "substantial evidence" need not be something prison officials should be overly concerned about. In each case they should write their conclusions and the reasons for them based on the evidence they have heard. Wolff, supra, 418 U.S. at 564, 94 S.Ct. at 2979. It is, of course, hoped that when the evidence is not substantial, they will accordingly find the inmate not guilty of the charges against him. If however, they do find him guilty, it will then be the responsibility of the reviewing courts in the final analysis to determine whether the decision was based on substantial evidence, or whether the decision was sufficiently arbitrary so as to be a denial of due process. Clearly, a decision to order a disciplinary transfer cannot be made arbitrarily or capriciously. United States ex rel. Miller v. Twomey, 479 F.2d 701, 715 (7th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974).
 
 
 36
 A written statement reflecting the reasons and the conclusions of the tribunal will aid in determining whether this standard has been met. The judgment of the district court on this issue is affirmed.[14]
 
 III
 
 37
 The district court in its February 8, 1974, order required that prisoners confined in segregation for an indefinite term were to be accorded, at least every thirty days, a periodic review of their segregated status conducted in a manner consistent with the procedural rules previously approved by the district court.[15] The defendants have requested this court to modify in part that order.
 
 
 38
 The issue to be resolved is whether prison officials may conduct a simple file review every thirty days or whether a full adversary hearing must be held. The defendants conceded, as they must, that where an inmate is the subject of a new disciplinary report, which is likely to have an effect on the continuation of his term in segregation, the inmate should be given a hearing conforming with the procedures set for prison disciplinary hearings. Adams v. Carlson, 488 F.2d 619, 634-35 (7th Cir. 1973). Conversely, the plaintiffs conceded at oral argument that where an indefinite segregation sentence is imposed and no new disciplinary reports or other adverse matters are placed in the inmate's record for consideration by the committee reviewing the inmate's segregation term, then there was no need for a full adversary hearing.[16]
 
 
 39
 After the respective concessions, it appears that the only area of disagreement remaining is what should be the appropriate administrative review in the case where adverse matters are informally made available to the reviewing committee or recorded in a form other than a disciplinary report.
 
 
 40
 Since the plaintiffs' concession requires a modification of the order below, and because the factual basis of plaintiffs' concern regarding informal adverse material being made part of prisoners' files has not been presented to this court, this question is remanded to the district judge to fashion an order that resolves the narrow area of contention that remains between the parties.
 
 IV
 
 41
 Plaintiffs have cross-appealed from that part of the district court's order that required hearings be held only for those individuals that had been subject to a disciplinary transfer to the Prison and who as a result of that transfer were still in I.D.U. at the time of the district court's order. Plaintiffs asked this court to extend that order to those prisoners who had been placed in I.D.U. as a result of a disciplinary transfer during the period July 1971 to July 1972 without any type of hearing and who had been released from segregation.[17] In the alternative they seek to have the records of such individuals expunged.[18]
 
 
 42
 Plaintiffs contended that despite their release from segregation they continue to be adversely affected by their disciplinary transfer. Reports of such a transfer, they contended, are considered by the parole board, affect classification decisions, and affect assignments for work release or study release. Cf. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974).
 
 
 43
 Wolff held that new prison disciplinary requirements were not to be applied retroactively. Plaintiffs contended, however, that those prisoners transferred between July 1971, just after this court decided Adams v. Pate, 445 F.2d 105 (7th Cir. 1971), and July 1, 1972, when Indiana officials instituted a hearing procedure for prisoners being transferred, should be afforded a hearing to determine whether their records should be expunged.
 
 
 44
 In Adams where a prisoner before being placed in segregation was taken before a disciplinary captain for a determination of guilt or innocence this court said:
 
 
 45
 It thus appears that the prisoner is confronted with the accusation against him and afforded a reasonable opportunity to deny the accusation or explain his actions. In the context of the nature of the administrative action here involved, this would appear to fairly and rationally satisfy the concept of procedural due process. Id. at 108.
 
 
 46
 The defendants contend that the above statement from Adams is dicta and in any case means only that the procedures referred to were acceptable, not that they represented the minimum which was consistent with due process. This court, however, has not so treated this statement from Adams. Chapman v. Kleindienst, 507 F.2d 1246, 1252 (7th Cir. 1974); Adams v. Carlson, 488 F.2d 619, 624 (7th Cir. 1973).
 
 
 47
 The fact that the quoted portion of Adams is not dicta does not necessarily require that individuals who were transferred between July 1971 and July 1972 have their records expunged. At most Adams provided prisoners with an opportunity to deny the accusations against them and explain their actions to prison officials.
 
 
 48
 Plaintiffs' primary concern is their reduced likelihood of being granted parole because of their disciplinary transfer. Any error in failing to follow the Adams' procedure can be rectified by including on the prisoner's record a statement by him denying the accusations against him and explaining his actions. The disciplinary action taken against the prisoner should then be reviewed by Prison officials in light of this statement. Adams required no more.
 
 
 49
 Although it is conceivable that in a very few instances the prisoner's explanation, at the time of the incident, may have avoided a disciplinary transfer, whereas a review of his explanation at this point will not result in a decision to expunge his record, we think the proposed relief strikes an appropriate balance. Admittedly, Adams was not entirely clear on this point.[19] and we believe that in light of this fact, the disruption that would be caused to the Indiana Parole System by the mass ordering of expungement in many cases where it would not be appropriate in order to correct the few cases that may not be cured by our action in this case, would not be justified. See Wolff v. McDonnell, supra at 573, 94 S.Ct. at 2983.
 
 
 50
 The order appealed from by the defendants (74-1328) is affirmed in part and remanded with directions in part.
 
 
 51
 The order of the district court on the cross-appeal (74-1320) is affirmed as modified.
 
 
 
 *
 Chief Judge Howard T. Markey of the United States Court of Customs and Patent Appeals is sitting by designation
 
 
 [1]
 The various classes defined by the district court corresponding to the relief requested were: "(T)he inmates of the Indiana State Prison who have been transferred for disciplinary reasons from the Indiana Reformatory and who were incarcerated in I.D.U. or another seclusion unit upon and after their arrival; the inmates of the Indiana State Prison who have been in the past, are in the present, or may be in the future, incarcerated in I.D.U. or D.O. Seclusion within the Indiana State Prison; and all the inmates of the Indiana State Prision who have or will communicate by mail with their attorneys." Aikens v. Lash, 371 F.Supp. 482, 484 (N.D.Ind.1974)
 
 
 [2]
 The Reformatory had a security classification of medium-maximum
 
 
 [3]
 The Prison had a maximum security classification
 
 
 [4]
 For a description of the conditions existing in I.D.U. see Aikens, supra at 488-89
 
 
 [5]
 The State has not argued on appeal that a transfer from the Reformatory to the Prison with concomitant commitment to I.D.U. segregation is not a grievous loss. For a description of the nature of the loss to transferees see Aikens, supra at 489
 
 
 [6]
 We interpret the district judge's order with regard to good cause for denying confrontation and the appropriate written record to be made, as applicable to situations where prison officials in their discretion deny only the right to cross-examination. We assume, therefore, that the district judge would have required that the written record reflect the reasons in cases where prison officials allowed the right of confrontation, but denied the right of cross-examination
 
 
 [7]
 For a description of the abhorrent conditions existing in D.O. see Aikens, supra at 496-98
 
 
 [8]
 The district court did not enter any order with regard to the conditions of confinement in I.D.U. and the associated problems of a shortage of staff because the 1974 session of the Indiana General Assembly was considering action to correct deficiencies in this area
 Similarly, no decision was made on the issue of censorship of literature at the Prison in view of the fact that Morales v. Schmidt, 494 F.2d 85 (7th Cir. 1974), was then pending before this court.
 The district court retained jurisdiction over both of these matters and at oral argument we were advised that no further order had been entered by the district judge. We, of course, indicate no opinion on these issues.
 
 
 [9]
 The State has not argued that prisoners are not entitled to a hearing prior to a disciplinary transfer. See note 5 supra
 
 
 [10]
 Because of our decision in part IV infra, there is no retroactivity problem as contemplated by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The class defined by the district judge challenging the hearing procedure consisted of all those transferred from the Reformatory to the Prison and then confined in I.D.U. Of this group, all had been released from their confinement in I.D.U., attributable to the transfer, at the time of the district court's order except for plaintiff Aikens, who was subsequently accorded an appropriate hearing. Thus, any procedure affirmed by this court would only have a prospective effect from the date of the district court's order
 
 
 [11]
 The actual order required written reasons for a denial of confrontation. We have interpreted this to mean that a written record be made if a request for cross-examination is denied. See note 6 and accompanying text supra
 
 
 [12]
 In the same paragraph of its order the district court ordered both that witnesses be interviewed in the presence of the inmate and that the inmate have the right of cross-examination. Only the latter holding has been attacked on appeal
 
 
 [13]
 The Wolff Court said:
 Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. Wolff, supra at 565, 94 S.Ct. at 2979.
 
 
 [14]
 One final procedure ordered by the district court was an administrative review of the disciplinary transfer decision by the Commissioner of Correction or his designate
 The State in its brief states that it is presently conducting such a review, and that it has only raised the issue on appeal to be consistent with its position that this procedure is not required by due process as interpreted by Wolff. In its brief and at oral argument, the State represented that the procedure now being followed would be continued. Based on this representation, we find it unnecessary to consider whether procedural due process requires such an administrative review.
 
 
 [15]
 This order is, of course, modified to the extent that the due process procedures have been modified by this court's decision
 
 
 [16]
 In such a case the committee will only be reviewing the original infraction for which the inmate was placed in segregation and subsequent favorable behavior that has been reported to determine whether the inmate should be removed from segregation
 
 
 [17]
 Only plaintiff Aikens received a hearing in accordance with the district court's order because all the remaining named plaintiffs had been released from the segregation that had been imposed because of the disciplinary transfer
 
 
 [18]
 Presumably, both forms of relief sought by the plaintiffs (hearing or expungement) would lead to the same result a modification of the prisoners' records
 
 
 [19]
 Compare United States ex rel. Miller v. Twomey, supra, at 718 with Chapman, supra, at 1252; Adams v. Carlson, supra, at 624