**Douglas DAIGLE**

v.

**Raymond A. HELGEMOE, Warden, New Hampshire State Prison.**

**Civ. A. No. 75–141.**

United States District Court,
D. New Hampshire.

July 30, 1975.

Douglas Daigle, pro se.

James L. Kruse, Concord, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This is a prisoner's civil rights action brought pursuant to 42 U.S.C. § 1983. Petitioner is presently confined in the New Hampshire State Prison. He does not contest either the basis or length of his confinement, but complains about the conditions of his confinement. Jurisdiction is grounded in 28 U.S.C. § 1343(3). A hearing was held on July 8, 1975.

## FACTS

■ Petitioner, after being afforded a due process hearing on an unrelated disciplinary matter, was "sentenced" to the prison's segregation unit. On April 8, 1975, while en route to solitary confinement, an examination of a Bible carried by petitioner disclosed that he had taped contraband to its inside pages.[1] On the basis of this discovery, a minor disciplinary report was filed against petitioner by Lieutenant La-Valley. On April 9, 1975, petitioner was given written notice informing him of the charges leveled against him. On April 11, 1975, petitioner's disciplinary hearing was held while he was confined in a segregated cell.

In *Collins v. Hancock*, 354 F.Supp. 1253, 1259 (D.N.H.1973), I held that written notice "should be given to the accused at least five days prior to the hearing." I note that prison regulations provide that when a minor disciplinary hearing is involved, as is the case here, the accused be given twenty-four hours notice. I find that, under most circumstances, considering the severity of the penalty, such notice is reasonable.

The facts at this point become disputed. Petitioner alleges that he specifically requested that inmate counsel and Lieutenant LaValley be present at the hearing and that these requests were denied. The three Board Members, through affidavits, aver that, while petitioner's request for inmate counsel was

---

1. The impermissible items were: three band-aids, four pieces of pencil lead, one razor blade, and a piece of string.

denied, he failed to ask for the production of any witnesses.

Petitioner testified at the hearing that he had been in solitary confinement for three days when, without any warning, the three Board Members descended upon him demanding to know how he pleaded to the charges. He said that, after three days in solitary, his mind was "cloudy" and that he was unable to comprehend the sudden change in events. He further testified that he felt the hearing was so biased that there was no "sense in going on with it."

After rejecting petitioner's plea of not guilty, the Board found him guilty and recommended that he be placed on fifteen days "red tag" status. This recommendation was approved by the Warden. (Defendant's Exhibit No. 1)

## ISSUES

This case presents the following issues:

1. Whether consonant with due process a disciplinary hearing can be held while an inmate is confined in a segregated cell; and

2. Whether whenever an inmate's request for the presence of witnesses is denied the prison authorities must make their reasons for the denial a part of the record and known to the inmate.

## THE LAW

The task of evaluating prisoners' due process claims in the wake of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), will be both continual and problematic. *Fano v. Meachum*, 520 F.2d 374 (1st Cir. 1975); *McLaughlin v. Hall*, 520 F.2d 382 (1st Cir. 1975); *Palmigiano v. Baxter*, 487 F.2d 1280 (1st Cir. 1973), *vacated*, 418 U.S. 908, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), *after remand*, 510 F.2d 534 (1st Cir. 1974), *cert. granted*, 421 U.S. 1010, 95 S.Ct. 2414, 44 L.Ed.2d 678 (1975).

The scope and extent of prisoners' rights is in a mercurial state. Until the last decade, courts had a "hands off" approach towards prisoners' claims of constitutional deprivation. *See generally* Note, Beyond the Ken of the Courts: A Critique of Judicial Refusal to Review the Complaints of Convicts, 72 Yale L.J. 506 (1963). The courts' deferential attitude allowed prison officials to exercise unbridled discretion, often resulting in barbaric prison conditions. *See* Hirschkop & Millemann, The Unconstitutionality of Prison Life, 55 Va.L.Rev. 795 (1969).

Courts are no longer willing or able to turn a deaf ear to prisoners' complaints. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). An impressive body of law focusing on prisoners' rights has recently emerged. Entire prisons have been held violative of the Eighth Amendment when the conditions of confinement have been so base as to be contemptuous of "evolving standards of human decency." *Holt v. Sarver*, 309 F.Supp. 362 (E.D.Ark.1970), *aff'd*, 442 F.2d 304 (8th Cir. 1971); *Inmates of Suffolk County Jail v. Eisenstadt*, 360 F.Supp. 676 (D.Mass.1973), *aff'd*, 494 F.2d 1196 (1st Cir.), *cert. denied sub nom., Hall v. Inmates of Suffolk County Jail*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974). And while prisoners have abused the legal process, *Sparks v. Fuller*, 506 F.2d 1238 (1st Cir. 1974), there is little doubt that without federal judicial intervention, prisoners would still remain "non-persons" in the eyes of the Constitution.[2] *Wolff, supra*, 418 U.

2. Unlike most citizens, prisoners are not able to avail themselves of the political process in order to redress their grievances. *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974); Note, Bargaining in Correctional Institutions: Restructuring the Relations Between the Inmates and Prison Authority, 81 Yale L.J. 726 (1972). The courts are the watchdog of prisoners' rights. Its task should not be muzzled under the restraining rubric of judicial discretion. See *Taylor v. Schmidt*, 380 F.Supp. 1222, 1231–1232 (W.D.Wis.1974).

S. at 593–601, 94 S.Ct. 2963 (Douglas J., dissenting in part.)

■■ An inmate being held in a segregated unit is entitled to a due process hearing for any "new disciplinary report, which is likely to have an effect on the continuation of his term in segregation. . . . ." *Aikens v. Lash,* 514 F.2d 55, 61 (7th Cir. 1975); *Wolff, supra,* 418 U.S. at n.19, 571–572, 94 S.Ct. 2963; *LaBatt v. Twomey,* 513 F.2d 641 (7th Cir. 1975). Courts have consistently held that "[i]n a prison setting where liberty is by necessity shrunken to a small set of minor amenities," *Baxter, supra,* 487 F.2d at 1284, any disciplinary action which results in a change in custodial status is a "grievous loss" to the inmate necessitating a due process hearing. *Gomes v. Travisono,* 490 F.2d 1209, 1213 (1st Cir. 1973), *cert. denied* 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974); *Collins v. Hancock,* 354 F.Supp. 1253 (D.N.H.1973).

■ Having found that due process guarantees are applicable, I proceed to determine "what procedures are appropriate under the circumstances." *Fano, supra,* at 379. This determination is fashioned and achieved by balancing the loss an inmate will suffer as a result of an adverse determination against the burden that the procedures will place on prison officials. *Gomes v. Travisono,* 1st Cir. 510 F.2d 537 at 541.

Petitioner's constitutional objections to the hearing are as follows. First, it occurred while he was in a segregated cell. Second, he was denied the opportunity to confront or cross-examine the accusing officer. Third, his request for inmate counsel was impermissibly denied.[3]

I am mindful of the Supreme Court's admonition that federal courts are "ill-equipped to deal with the increasingly urgent problems of prison administration

and reform." *Procunier v. Martinez, supra,* 416 U.S. at 405, 94 S.Ct. at 1807.

■ But the purpose of due process is the protection of the individual from arbitrary governmental action, *Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 32 L.Ed. 623 (1889), and the "opportunity to be heard" at a fair and impartial hearing. *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). In order to achieve these ends "[t]he hearing must be 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo,* 380 U.S. 545, 552, [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] (1965)." *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).

To be constitutionally proper, a hearing should be fair in both form and substance. To the optimal extent possible, prison officials should endeavor to create an atmosphere in which prisoners will feel that they have been treated fairly and equally. It is highly doubtful that an inmate will believe that he has been treated fairly when he views both his judges and accusers through the steel bars of a solitary cell.

■ I find that conducting a disciplinary hearing while an inmate is confined to a solitary cell is antithetical to the due process criterion that the hearing be held "in a meaningful manner." The unannounced arrival of the Board and the charges they brought left petitioner with little time to gather his senses and adequately state or argue his position. A procedure which places the inmate in a grossly inferior position can only reinforce feelings of persecution and injustice.

I recognize that the disciplinary process should operate swiftly. If an inmate breaks the rules, he must recognize that disciplinary action will follow quickly. *Walker v. Hughes,* 386 F.Supp. 32, 39

---

3. Although this case does not present the issue, it must be noted that when an inmate is confined to an isolation cell and a hearing is swiftly convened, he may be substantially denied the right "to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff, supra,* 418 U.S. at 564, 94 S.Ct. at 2978.

(E.D.Mich.1974). But the disciplinary procedure has another purpose. In *Wolff*, the Court recognized that the disciplinary procedure is utilized "as a tool to advance the rehabilitative goals of the institution." *Id.* 418 U.S. at 563, 94 S.Ct. at 2978.

If the concept of rehabilitation is to be anything more than a shibboleth, the disciplinary process should provide the inmate with the sense that he has been treated fairly. A hearing which battens institutional hostility and antagonism corrodes the goal of rehabilitation. On the other hand, a fair and open hearing will give "the inmate the sense that his case is fairly and justly decided. Such a process can assist in the inmate's rehabilitation by teaching respect for law." *Walker, supra,* 386 F.Supp. at 40; *cf. Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). The First Circuit has recognized that "[t]here is nothing more corrosive to the fabric of a public institution such as a prison than a feeling among those whom it contains that they are being treated unfairly." *Palmigiano v. Baxter, supra,* 487 F.2d at 1283. *See generally* Fox, Why Prisoners Riot, 35 Fed. Prob. 9 (1971).

■ In balancing the interests of the parties, I find that, in the absence of a security risk to the institution, no disciplinary hearings shall be conducted while an inmate is confined in a solitary cell. If the State believes that conducting the hearing in an open room will compromise prison security, then they must make their reasons a part of the written record. If prison officials desire to proceed against an inmate who is confined to a solitary cell, then they have the option of either conducting the hearing in an open room or else waiting until the inmate is released from solitary confinement. While one aim of the disciplinary process is to quickly mete out justice, the due process clause "recognizes higher values than speed and efficiency." *Fuentes v. Shevin,* 407 U.S. 67, 90–91, n.22, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1971).

## CONFRONTATION OF WITNESSES

■ *Wolff* held that:

Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. *Id.* 418 U.S. at 566, 94 S.Ct. at 2980.

Because the refusal to call witnesses affects the parity of the hearing and is subject to abuse, the Board "must enter in the record of the proceeding and make available to the prisoner an explanation for the denial." *Clutchette v. Procunier, on rehearing,* 510 F.2d 613, 616 (9th Cir. 1974); *Aikens v. Lash, supra,* 514 F.2d at 60; *Daigle v. Hall,* 387 F.Supp. 652, 660 (D.Mass.1975); *Walker v. Hughes, supra,* 386 F.Supp. at 43.

■ In applying this rule to the instant case, I note that the facts are in dispute as to whether petitioner requested the presence of witnesses. I find, based upon the affidavits of the three Hearing Board Members, that petitioner failed to request the presence of any witnesses.

■ Finally, petitioner's claim that the hearing was defective because he was not represented by inmate counsel is without merit. Petitioner is neither illiterate nor are the factual issues involved complex. *Wolff, supra,* 418 U.S. at 569–570, 94 S.Ct. 2963.

This is not a class action so I cannot enter an order that will be binding on the defendant except as to petitioner. Because it is probable that other cases will be brought in this court addressed to these issues, I felt it necessary to expand the breadth of this opinion. *Collins, supra,* 354 F.Supp. at 1258.

## ORDER

1. No disciplinary hearing shall be conducted while an inmate is confined in a segregated cell unless the security of the prison demands it.

2. If prison officials believe it would compromise prison security to hold a hearing in an open room, then they must make their reasons a part of the record and known to the inmate.

3. If the hearing is held when the inmate is in solitary confinement, then prison officials must give him at least three hours notice of the hearing. This appears to be the minimum time for a prisoner confined in solitary to be able to mentally prepare for the hearing.

4. Whenever an inmate's request for the presence of a witness is denied, the Hearing Board must enter into the record and make known to the inmate the reasons for its denial.

In fashioning this order, I have kept in mind the First Circuit's apt statement that:

> Courts are not infallible, and it may take some trial and error before rules are written which establish the best possible balance between an inmate's rights and the needs of prison security. *Morris v. Travisono*, 509 F.2d 1358, 1361 (1st Cir. 1975).

So ordered.