Frederick **STEWART**, on behalf of himself and all others similarly situated, Plaintiff,

v.

Lawrence A. **JOZWIAK**, Superintendent of the Milwaukee County House of Correction, et al., Defendants.

No. 72–C–346.

United States District Court,
E. D. Wisconsin.

Aug. 29, 1975.

John F. Ebbott, Milwaukee Legal Services, Milwaukee, Wis., for plaintiff.

Gerald G. Pagel, Asst. Corp. Counsel, Milwaukee County, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This suit concerns an effort by the inmates at the Milwaukee County House of Correction ("MCHOC") to obtain certain declaratory and permanent injunctive relief. They seek to instill various elements of procedural due process of law into disciplinary hearings to which they are subjected. Because the action is governed by the fourteenth amendment to the United States Constitution, it arises under 42 U.S.C. § 1983; federal jurisdiction lies by virtue of 28 U.S.C. § 1343.

Both temporary and preliminary injunctive relief was granted by Judge Myron L. Gordon in orders entered June 16, 1972 and July 12, 1972, respectively. On August 11, 1972 Judge Gordon issued an order identifying the particulars

of such injunctive relief, and permitting the plaintiffs to proceed as a class under the provisions of Rule 23(a) and 23(b)(2), Federal Rules of Civil Procedure ("F.R.C.P.").

The action was transferred to this Court in October of 1974 as a part of the docket reconstruction that accompanied the addition of this federal judge to the United States District Court for the Eastern District of Wisconsin. This memorandum opinion concerns a motion for summary judgment that has been filed on behalf of the defendants under the provisions of Rule 56(b) and (c), F.R.C.P.

Although, through their efforts to obtain preliminary relief, these plaintiffs have brought about substantial changes in the disciplinary procedures currently in effect at the MCHOC, their counsel maintain that summary judgment would not be appropriate at this time because certain genuine issues of material fact remain to be resolved.

While the Court agrees that various issues of fact appear to be disputed, the Court would find these factual questions to be peripheral to the central focus of the petition for permanent injunctive and declaratory relief. As between these parties, the Court is of the opinion that entry of such final injunctive and declaratory relief is warranted because the duties and obligations to be imposed upon the defendants can now be identified as a matter of law. While some factual issues may remain, it appears to the Court that such questions concern the problem of whether the defendants are pursuing their duties and obligations in a satisfactory fashion. The Court feels that these matters can be best resolved in the context of a hearing on a motion for contempt of court, should the plaintiffs choose to take such action after final injunctive relief has been imposed.

■ The Court thus finds that the unresolved factual issues here do not directly affect the problem of the scope of the constitutional protection to be afforded these inmates at disciplinary hearings within the MCHOC. This memorandum opinion will therefore trace the dimensions of such constitutional protections, as established by several recent rulings by the federal courts of this nation.

■ Although no formal cross-motion for summary judgment has been filed on behalf of these plaintiffs, the Court finds that it may proceed as though this were the case. *See,* 10 Wright & Miller, Federal Practice and Procedure: Civil § 2720, p. 467 et seq. (1973 ed.); *Keller v. Fochs, et al.,* 385 F.Supp. 262, 264 (E.D.Wis., 1974).

## I.

In their brief in opposition to this motion for summary judgment, counsel for the plaintiffs maintain that issuance of summary judgment would be improper because these defendants have hampered discovery in this case such that the factual bases of the action have not been adequately ventilated. By order dated April 25, 1975, this Court insured that members of this class of plaintiffs would be permitted to consult with their attorneys out of the presence of MCHOC personnel. Subsequent to that order, several affidavits were filed by plaintiffs' counsel, and no further disclosure problems have been brought to light.

In view of the foregoing circumstances, the Court assumes that counsel for the plaintiffs have obtained the information they require, and that further relief in this regard is unnecessary.

## II.

The first of the several issues presented by this motion for summary judgment concerns the question of inmate representation at MCHOC disciplinary hearings.

In his opinion of July 12, 1972 granting preliminary injunctive relief, Judge Gordon declined to order that an inmate must be represented or that such representation must be by an attorney. Al-

though he purportedly reserved this matter for trial, this Court finds that the issue has been sufficiently clarified by subsequent decisions and events to permit a ruling at this time.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court held that prison disciplinary hearings can comport with concepts of due process of law within the meaning of the fourteenth amendment despite the absence of either retained or appointed counsel. This decision was qualified, however, by the statement that where a particular inmate is illiterate, or where the issues with which he is confronted are unusually complex, he ". . . should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff v. McDonnell, supra*, 418 U.S. at p. 570, 94 S.Ct. at 2982.

While the Supreme Court has pursued this matter no further, the United States Court of Appeals for the Seventh Circuit has added to the law here by stating that the lower courts should define "complex" cases so as to clarify those conditions which will require that representation be given in prison disciplinary proceedings. *See, Aikens v. Lash*, 514 F.2d 55 (7th Cir., 1975). In *Aikens*, the Court stated that the "complexity" of an issue is often a function of the amount of information available to a prisoner, and that where he is confined prior to a hearing and unable to collect information, representation should be provided.

By affidavit dated April 2, 1975, the Assistant Superintendent of the Milwaukee House of Correction has noted that the following language is to be inserted into HOC disciplinary regulations:

"Where an illiterate inmate is involved, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, a staff member will be assigned to aid him in the presentation of his case."

Affidavit of Franklin M. Lotter, attached as an exhibit to the reply brief in support of defendants' motion for summary judgment.

■ In view of the foregoing, this Court determines that the plaintiffs have obtained the relief to which they are entitled, provided that the language quoted above is construed to grant representation to inmates who are confined prior to a disciplinary hearing and thus unable to collect the information required to present an adequate defense. Whether representation is necessary will of course depend upon factors such as the length of the confinement, the amount of the data involved in the case, and the level of sophistication of the particular inmate who has been charged, but these are considerations that must be weighed when MCHOC staff personnel determine whether representation is necessary.

■ In order to make such a determination meaningful, the Court finds that MCHOC personnel must establish a record that each inmate to be disciplined has been advised of his right to representation under the conditions described above, and that the prisoner's contentions in this regard have been considered.

### III.

■ The foregoing discussion of the right to representation at MCHOC disciplinary hearings assumes that there will be certain circumstances when immediate segregation or incarceration will be necessary, followed by a hearing at a later date.

Counsel for the plaintiffs argue that the MCHOC regulations are ambiguous in this regard, that factual disputes ex-

ist as to the speed with which hearings are held, and that some resolution of this issue is necessary.

The Court finds this matter to be governed by the decision entered by Judge Grant in *Aikens v. Lash,* reported at 371 F.Supp. 482 (N.D.Ind., 1974); his order reads in pertinent part as follows:

"In a true emergency situation, one wherein the general security of the institution is immediately threatened a disciplinary transfer, as the term has been used herein, may be allowed without a prior notice and hearing, provided, however, that where such an emergency transfer is effected, the transferred inmate must be given a hearing within five days of the date of his arrival at the transferee institution, and all according to the minimum standards set forth below. In this connection, however, we quote with approval the following language of the Court in *Kessler v. Cupp,* 372 F. Supp. 76 (D.Or., 1973):

'It should be crystal clear, however, that the determination of the institution-wide emergency situation is one which calls into play the informed expertise of the Superintendent or Warden. Courts cannot and should not "second guess" Wardens on this score.' "

The Court notes that this aspect of the district court's opinion was not modified when cross-appeals were presented to the United States Court of Appeals for the Seventh Circuit. *See, Aikens v. Lash,* 514 F.2d 55 (7th Cir., 1975). The defendants will be ordered to amend the regulations governing disciplinary hearings at the MCHOC to comply with the standards set forth above.

### IV.

Plaintiffs' counsel contend that there exist certain material ambiguities concerning the nature of the notice given MCHOC inmates in advance of disciplinary hearings. By briefs and affidavit, counsel for the defendants urge that the disciplinary practices currently in effect at the MCHOC comport with the dictates of the order entered by Judge Gordon on July 12, 1972, as well as the standards imposed by *Wolff v. McDonnell, supra.*

■ The Court finds that so long as written notice is given an inmate to be disciplined at least 24 hours prior to his hearing, the requirements of the fourteenth amendment are satisfied; said notice must inform the prisoner of the charges against him with specificity sufficient to enable him to marshal the facts and prepare a defense. *Wolff v. McDonnell, supra,* 418 U.S. at p. 564, 94 S.Ct. 2963.

Because the disciplinary regulations at the MCHOC appear to be somewhat ambiguous in regard to specificity of the notice to be given, said regulations are to be amended at § III(E)(1) to reflect the language articulated here.

### V.

Plaintiffs' counsel argue that there exist certain material ambiguities in the MCHOC disciplinary regulations governing the nature of the written decision to be given the inmate subsequent to his disciplinary hearing. They urge that this Court order said regulations to be modified to require the hearing board to articulate not only a short written statement of conclusions, but also the evidence relied upon in reaching such conclusions.

■ This Court finds that a statement of the evidence relied upon in reaching their result is an important aspect of the decision which the hearing board is required to draft. *See, Wolff v. McDonnell, supra,* 418 U.S. at pp. 564, 565, 94 S.Ct. 2963. The disciplinary regulations of the MCHOC will be amended at § III(E)(5) to require that a statement of the evidence on which the board relied be given, together with a written summary of findings of fact and conclusions of law. *Cf: Aikens v. Lash,*

*supra,* 514 F.2d at p. 60 [Hearing of-' ficials must base findings and conclusions on "substantial evidence."]

## VI.

The plaintiffs' counsel have charged that the disciplinary procedures now in effect at the MCHOC are in violation of .due process of law, as guaranteed by the fourteenth amendment, because the hearing board that presides over disciplinary proceedings is impermissibly biased against the inmates as an institution and as a matter of fact. They argue that the positions of the MCHOC personnel who sit on said board are such as to create an inherent bias in favor of prison order, and that the individual members are themselves biased against the prisoners who come before them, as a matter of fact.

█ The Court finds, as a matter of law, that the disciplinary board established by the current disciplinary regulations at the MCHOC cannot be said to be "inherently" biased against prisoners by virtue of its composition.

Section III(C)(2) of the MCHOC disciplinary regulations dictates that a three-person board be utilized to hear disciplinary charges, said board to include the Assistant Superintendent as chairman, the Correction Guidance Office Supervisor and the Correction Office Supervisor. In the absence of any of these three persons, certain MCHOC staff members are designated to sit as replacements.

█ The United States Supreme Court has held that, in the context of intra-prison disciplinary hearings, due process of law does not require that prisoners be judged by persons with no connection to the penal institution. *Wolff v. McDonnell, supra,* 418 U.S. at p. 570, 94 S.Ct. 2963. Because the result there appears to be predicated upon the existence of certain regulations governing disciplinary board behavior, the Court will insist that similar limiting language be incorporated into the MCHOC disciplinary regulations at § III(C)(2). Said regulations must indicate that:

(1) Full consideration is to be given to the causes for the adverse behavior, the setting and the circumstances in which it occurred, the man's accountability, and correctional treatment goals; and

(2) Disciplinary measures will be taken only at such times and to such degrees as are necessary to control a man's behavior within acceptable limits and will never be rendered capriciously or in the nature of retaliation or revenge.

Because the board members specified in § III(C) of the MCHOC disciplinary regulations are specifically required to disqualify themselves if they were involved in the investigation of the incident or preparation of the charges at issue, disciplinary regulations § III(E)(2), the Court cannot now hold that due process is violated by the composition of the disciplinary hearing board. *Cf: Aikens v. Lash, supra,* 371 F.Supp. at p. 492. [Disqualification of those hearing officers involved in the incident at issue satisfies the requirements of due process of law].

While various affidavits have been filed to support the plaintiffs' charges that the particular individuals that now comprise the MCHOC disciplinary board are in fact biased against inmates, the Court finds these insufficient to warrant a ruling barring any or all of these persons from sitting as disciplinary board members at any time in the future. By its very regulations the MCHOC requires withdrawal if any member feels unable to be impartial; should these regulations be abused or ignored, this Court remains available to cure flagrant examples in particular situations. *See:* Order of April 25, 1975 enjoining Capt. Robert Gaieck from sitting in judgment of two particualr inmates; *see too,* Censure of Mr. Frankin Lotter issued by Judge Gordon in

contempt hearing of September 29, 1972, at p. 3 of the transcript thereof.

■ This Court stands in full accord with the proposition that prisoners are to be accorded due process of law within the meaning of the fourteenth amendment; it is clear, however, that a full panoply of rights is not thereby granted. *Wolff v. McDonnell, supra,* 418 U.S. at p. 556, 94 S.Ct. 2963. The Court finds the orders and avenues of relief established by this portion of the memorandum opinion to be a satisfactory accommodation between the needs and objectives of the institution and the relevant provisions of the United States Constitution.

## VII.

For the reasons set forth in the preceding memorandum opinion, it is hereby ordered that the defendants, their agents, and those acting in concert with them, are permanently enjoined from conducting any further disciplinary hearings with respect to the class of plaintiffs described above when such hearings may result in disciplinary confinement or forfeiture of good time, unless and until the following changes in policy and/or procedure are incorporated into the regulations governing disciplinary hearings at the Milwaukee County House of Correction:

(1) No disciplinary confinement or loss of good time is to be imposed absent a disciplinary hearing where the basic elements of procedural due process are observed, as described herein, except where the security of the institution is proximately threatened; where immediate confinement is necessary, a hearing shall follow within not more than five days time;

(2) Prior to any disciplinary hearing, an inmate is to be advised that he is entitled to representation if he is illiterate or if the issues confronting him are unusually complex; the determination of whether representation is to be granted will be made by the disciplinary board, but such determination is to be based upon consideration of both the literacy of the prisoner and the complexity of the case in terms of (a) the length of the prisoner's confinement, if any, prior to the hearing, (b) the amount of factual data involved in the case, (c) the level of sophistication of the prisoner charged, and (d) any other relevant factors; the board must permit the inmate to be heard in this regard;

(3) Disciplinary hearings which may result in confinement or loss of good time shall include at least the following procedural elements:

A. Impartial hearing officers who were not involved in the transaction and who have not participated in an investigation of the charges, with duties circumscribed as described at "1" and "2" in part VI of this memorandum opinion;

B. Reasonable written notice to be given at least 24 hours prior to the disciplinary hearing to which an inmate is to be subjected; said notice must inform the prisoner of the charges against him with specificity sufficient to enable him to marshal the facts and prepare a defense;

C. An opportunity for the inmate charged to present witnesses at the hearing;

D. An opportunity for the inmate charged to confront and question his accusers;

E. A written statement of final decision setting out findings of fact and conclusions of law, together with the evidence upon which such determinations are based.

It is further ordered that, as limited by the terms of the foregoing memorandum and order, the defendants' motion for summary judgment is granted and the plaintiffs' opposition thereto is overruled.

Each party is to bear the costs he has incurred in connection with the prosecution or defense of this action.