Parker, J.
The first suit is to enforce the specific execution of an agreement; the last, to set it aside. The chancellor decreed specific execution according to the prayer of the first bill, and dismissed the other: and I am of opinion that he did right in both cases.
First, Because it is not proved to my satisfaction, that when Francis and William Duckett executed the agreement of the 15th of August 1827, they were in fact ignorant of the provisions of the last will of their father. The facts and circumstances tending to shew their ignorance or knowledge are nearly equally balanced, and the burden of proof is upon them, to shew clearly a mistake.
2dly, Because, if they did believe that will to contain what has been called the equalizing provision, it was belief induced by gross negligence, which equity ought not to relieve against. All the papers were before them, and they had only to examine them before the agreement was signed, to know what they were doing. They were appointed executors in the last will, and the agreement of the 15 th of August was drawn up by Francis, with the obvious intention, as I conceive, of establishing that paper, and no other; and so all the parties understood it. By the slightest diligence, a full knowledge of the contents of this paper *56 might have been obtained; and it would be to encou- . . . . _ rage carelessness and the most inexcusable negligence, to relieve the parties against the consequences of a solemn contract entered into under such circumstances. 1 Stor?’s E5uity> ch- 5- § 146. ^
^ 3dly, It is not clear to my mind that the omission in the last will, of the 400 or 500 dollars to Francis and William Luclcett, renders their portions unequal, or makes the agreement to abide by it inequitable. It would 'clearly be advantageous to them to get 400 or 500 dollars in addition, but I see no proof that they have not got land of as much value as several others of the children. The testator himself no doubt thought, at one time, that it would take 400 or 500 dollars to make their lands equal to those of the rest of his children, for he has said so in the cancelled wills; but from his omitting this clause in the last will, we may infer a change of opinion; and there is no evidence to prove inequality, or to afford a fair ground of presumption that if Francis and William Luckett had carefully read the last will, they would not have entered into the agreement. Much less is there any evidence to shew that the setting aside this agreement, and bringing the real estate into hotchpot, will produce justice and equality between the children; but there is every reason to believe the reverse.
4tbly, This is an arrangement to abide by the will of a father, and prevent family disputes. It is, as far as I can see, a fair, reasonable, praiseworthy compromise of the difficulties arising out of a total or partial intestacy, and ought to be upheld, whether the distinction taken by the counsel of Francis and William Luckett be a sound one or not. I am, however, strongly inclined to think that arrangements made between the members of a family, to carry into effect the wills of parents, and to prevent unseemly dissensions about property between near relations, ought, on principles *57 of public policy, to receive greater countenance from a court of equity, than if the agreement sought to be enforced were between mere strangers. 1 Story’s Equity, ^ 132. 137.
But in the view I take of the subject, it is unnecessary to discuss this point by collating the authorities brought to the notice of the court.
I am of opinion to affirm both the.decrees.
The other judges concurred. Decrees affirmed.