**Juan G. MORALES, Plaintiff-Appellee,**

**v.**

**Wilbur J. SCHMIDT, Defendant-Appellant.**

No. 72-1373.

United States Court of Appeals, Seventh Circuit.

Reheard En Banc May 29, 1973.

Decided March 22, 1974.

Robert D. Repasky, Asst. Atty. Gen., Dept. of Justice, Madison, Wis., for Wilbur J. Schmidt.

Anthony J. Theodore, Corrections Legal Services Program, Madison, Wis., amicus curiae.

Paul A. Hahn, Madison, Wis., for plaintiff-appellee.

Before SWYGERT, Chief Judge, KILEY, Senior Circuit Judge, and FAIRCHILD, CUMMINGS, PELL, STEVENS, and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the entry of a preliminary injunction by the District Court for the Western District of Wisconsin enjoining Wilbur J. Schmidt, the Secretary of the Department of Health and Social Services of the State of Wisconsin, and his agents from restricting correspondence between Juan Morales and his wife's sister. Morales v. Schmidt, 340 F.Supp. 544 (W.D.Wis. 1972). A decision by a panel of this court was handed down on January 17, 1973. Morales v. Schmidt, 489 F.2d 1335 (7th Cir. 1973). The facts are adequately stated in the above mentioned opinions. A majority of the active judges having so voted, this appeal was reheard en banc.

The general background of the situation in which the courts find themselves in litigation of the type in which the present case falls is aptly summarized by Judge Doyle of the Western District of Wisconsin:

"This is but one of the flood of constitutional lawsuits by prisoners. These suits have heavily burdened correctional authorities by requiring them to gather and to organize factual information for court pleadings, and to appear occasionally in court. The federal courts are also heavily burdened by this radical addition to their caseloads, and the absence of plaintiffs' counsel in most cases and the physical restraints upon the plaintiffs frequently render judicial administration unusually difficult. Many of these suits by indigent prisoners are wholly without merit under any view of the facts or the law; many are mischievous; some malicious. The plaintiffs are uninhibited by financial pressures. For many of these plaintiffs, that the very bringing of the suits in such numbers creates a serious problem for correctional authorities and the courts is a matter of indifference, and, perhaps, of wry satisfaction." 340 F.Supp. at 547.

Because of the volume of such cases, the problems of differentiating those presenting valid claims from those wholly lacking any cognizable basis for relief, the lack of guidelines in definitive Supreme Court opinions, and the understandable variances in individual judicial philosophies in the present fluxional area of constitutional law, difficulty has been experienced in articulating a disposition of the present case in a manner satisfactory to a majority of the active judges of this court. The problem is not in an acceptable enunciation of the basic guidelines applicable to controls that may properly be exercised by correctional authorities on the correspondence of those in their charge. Therefore, so that the disposition of this particular case may be no longer delayed, we address ourselves only to the narrow issues raised by this specific case.

(1) Although at the time of hearing in this court Morales had been released on parole, the case was not moot. We adopt the reasoning as to

mootness set forth in the original opinion.

█ (2) The district court erred in its holding that governmental differentiation of treatment between (a) those who have been convicted of a crime and (b) those who have not been convicted of a crime must be justified by applying the principles developed under the constitutional guaranty of equal protection of the laws.

█ (3) The district court erred in its holding that the standard which the state was required to meet to justify its restriction on Morales' engaging in correspondence with his sister-in-law was to demonstrate a compelling interest.

█ (4) The proper standard for consideration of the regulation or practice which restricted the right of free expression that a convicted person such as Morales would have enjoyed if he had not been convicted of a crime is that the State must show on challenge that such restriction is related both reasonably and necessarily to the advancement of a justifiable purpose of imprisonment.

█ It may well be that the same result which was reached by the district court in the particular facts here involved could have been reached if the standards we have herein determined to be appropriate had been applied. Error does not necessarily mandate reversal.

Because of the uncertainty inherent in the disposition of litigation upon an infirm predicate it is deemed necessary that the proceedings be remanded for further determination in accordance with this opinion. We also note that the posture of the case before the district court involved consideration of Morales as a prisoner rather than as a parolee, which he in fact then was, and presumably now is.

Because of the substantial lapse of time since the initiation of this appeal, during all of which time the defendant has been enjoined from interfering with correspondence between Morales and his wife's sister, we, as a discretionary matter, do not vacate the injunction, which will remain in effect pending further disposition of the case in the district court.

Remanded.

STEVENS, Circuit Judge, with whom SWYGERT, Chief Judge, and KILEY, Senior Circuit Judge, join (concurring).

As I stated in the opinion which I filed on January 17, 1973, notwithstanding my disagreement with Judge Doyle's equal protection analysis, I am persuaded that he correctly entered an injunction on April 6, 1972. I also agree with Judge Pell that the state may not abridge an inmate's right to communicate with others if the restriction is not "related both reasonably and necessarily to the advancement of a justifiable purpose of imprisonment."

Because no general statement can really be understood until it has acquired meaning through case by case application, a few additional comments may be helpful.

First, I would emphasize the point that "[w]hether we view the issue from the standpoint of the prisoner's right to communicate with others, or from the standpoint of society's right to know what is happening within a penal institution, it is perfectly clear that traditional First Amendment interests are at stake." [1]

Second, I am not convinced, and I do not think the general statement of a useful standard implies, that every prior restraint on an inmate's right to communicate is necessarily justified by a showing which meets the standard. I think the standard will be primarily useful in testing the validity of rules adopted by prison authorities relating to mail and like matters.

Third, the state's burden of justification is much heavier when it acts on an ad hoc basis (as it did in this case) than

1. See 489 F.2d at 1346 (1973).

when it implements a carefully drawn regulation.[2]

Fourth, the state has not met its burden of justifying the *ad hoc* determination disclosed by the record in the case before us, in part, because the record contains no evidence of consideration of less drastic alternatives than a total ban upon communication between Morales and Steffes.

Fifth, as I previously stated, if the state does adopt relevant guidelines which evidence awareness of the conflicting considerations that should influence particular decisions in this area, those guidelines would be presumptively valid. In view of the fact that First Amendment interests are at stake, it is important to remember that an excessively general or vague regulation[3] may be tantamount to no rule at all. The factors—the impact which the fear of punishment may have upon one's willingness to communicate and the public interest in not interfering with the exchange of information and ideas in the intellectual marketplace—which gave rise to the overbreadth exception to traditional doctrines of constitutional adjudication are clearly applicable within the prison walls as well as without. I am not sure whether an overbroad regulation of an inmate's speech is invalid because it is not entitled to the presumption of validity or because its overbreadth will readily overcome the presumption. That is clearly the kind of nice question of interpretation of a general guideline that can await a proper case for consideration.

With these caveats, I concur in Judge Pell's disposition of the appeal.

SWYGERT, Chief Judge (concurring).

I join with Judge Stevens in his concurrence, but desire to express some additional views.

Judge Pell would require "that the State must show on challenge that such restriction [of First Amendment rights] is related both reasonably and necessarily to the advancement of a justifiable purpose of imprisonment." I would add to Judge Pell's formulation by requiring the State to assume a heavy burden of justification. This, in my opinion, would require that prison officials demonstrate the restriction is not only reasonable but there is a substantial necessity for it. This more forceful standard would be less than a compelling State interest but clearly more than a rational relationship between the restriction and prison discipline and rehabilitation.

While agreeing with Judge Stevens as to the desirability of regulations rather than ad hoc determinations in this area, I suggest that prison regulations covering procedure in addition to rules relating to mail and other means of communication might help answer the question posed by Judge Stevens concerning the difficulty of formulating rules that would not be subject to constitutional at-

2. I note that my somewhat laborious reaction to the state's *ad hoc* approach to this case is not unlike the recent reaction of the Supreme Court (in quite a different context, of course) to "what amounts to an unpublished *ad hoc* determination," see Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

3. Professor Hart has identified the kinds of situation where such regulation is appropriate. "Sometimes the sphere to be legally controlled is recognized from the start as one in which the factors of individual cases will vary so much in socially important but unpredictable respects, that uniform rules to be applied from case to case without further direction cannot usefully be framed by the legislature in ad-

vance." Administrative regulations of industry under a "fair rate" standard, or the adjudication of negligence cases on the standard of "due care" are discussed as examples of legal situations where precise regulation by rule is impossible. See H.L.A. Hart, The Concept of Law, 127–130 (1961). Manifestly, the concern with not deterring protected speech in the regulation of the unprotected makes *ad hoc* regulation on the basis of overly broad standards inappropriate to the First Amendment context. See, *e. g.*, N.A.A.C.P. v. Button, 371 U.S. 415, 432–433, 83 S.Ct. 328, 9 L.Ed.2d 405; see also Harlan, J., dissenting, 371 U.S. at 453–455, 83 S.Ct. 328, 9 L.Ed.2d 405.

tack. If the State prescribed regulations that permitted the prisoner or parolee to challenge either ad hoc decisions or decisions under prescribed rules in an administrative proceeding, such procedure could have the effect of avoiding the risk of a constitutional attack on the rules themselves and at the same time afford the prisoner or parolee the right to challenge such decisions at an administrative level. A regulation of this sort would aid the prisoner or parolee, the State, and the courts since less resources would be required for all concerned if a matter such as here be first considered at an administrative level rather than in a court.