682 F.2d 648
 Richard OWEN, Plaintiff-Appellant,
v.
Russell E. LASH, individually and as the Warden of the
Indiana State Prison, and Charles E. Moore,
individually and as the Assistant Warden
of the Indiana State Prison,
Defendants-Appellees.
 Nos. 80-1105, 81-1409.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 26, 1982.
Decided June 28, 1982.
 
 1
 David E. Vandercoy, Valparaiso Univ. School of Law Clinical Program, Valparaiso, Ind., for plaintiff-appellant.
 
 
 2
 Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.
 
 
 3
 Before STEWART, Justice (Retired),* and PELL and SPRECHER,** Circuit Judges.
 
 
 4
 STEWART, Justice (Retired).
 
 
 5
 This case comes before this Court on appeal for the second time. The previous appellate panel remanded the case to the District Court with instructions for resolving several then outstanding factual disputes. The District Court on remand conducted further proceedings and entered judgment. Because we find that the District Court misunderstood the instructions of the earlier panel specifying the issues to be addressed on remand, we vacate the judgment before us and, once again, remand the case for further proceedings.
 
 I.
 
 6
 Over eight years ago, on February 4, 1974, plaintiff-appellant Richard Owen initiated this action seeking redress for, inter alia, the deprivation of his First and Fourteenth Amendment rights during his incarceration in the Indiana State Prison at Michigan City, Indiana. Specifically, Owen alleged that, during a period extending from March 1973 to February 1974, he was denied the right to correspond with a newspaper reporter and two individuals whose names he had received from a religious organization. Owen sought injunctive relief and damages, pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, against the defendant-appellee Russell E. Lash, both individually and as the Warden of the Indiana State Prison.[1]
 
 
 7
 On November 5, 1976, in response to Lash's pre-trial motion, the District Court dismissed Owen's claims based upon the denial of his right to correspond. The District Court held that these claims were barred by the doctrine of res judicata in light of the decision in Aikens v. Lash, 371 F.Supp. 482 (N.D.Ind.1974), aff'd, 514 F.2d 55 (7th Cir. 1975), vacated, 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976).[2]
 
 
 8
 On appeal, this Court reversed the District Court's order dismissing Owen's correspondence claims, ruling that the issue of the denial of Owen's personal correspondence rights had not been presented in Aikens v. Lash and, therefore, that the doctrine of res judicata did not bar the present suit. As to the merits of Owen's correspondence claims, the Court stated that "(c)onsidering the conclusive evidence adduced at the hearing that Owen's communications with Kenny were stopped for the sole reason that he was a newspaper reporter and that his communication with Rutkowski and Graff was stopped solely because he didn't know them prior to incarceration, it cannot be said that he failed to state a claim ...." Owen v. Lash, Unpublished Order, No. 78-1208 at p. 7 (7th Cir. June 14, 1979). 601 F.2d 600. The Court added, however, that the prison's limitations on Owen's correspondence right could not be found to have violated the Constitution if such restrictions had been justified by "rational" and "legitimate" state interests. Id. The Court also noted that even if the restrictions on Owen's right to correspond were found to have violated the Constitution, Warden Lash might be shielded from personal liability by the "qualified immunity" accorded to executive officials. Therefore, the Court remanded the case to the District Court to determine whether the denial of Owen's right to correspond had been supported by a "rational basis" and whether the defendant Lash was protected from individual liability by the doctrine of qualified immunity.
 
 
 9
 On remand, the District Court conducted further proceedings and concluded that "the state's justification for the inhibition on prisoner correspondence" did not "pass muster" and had to be "rejected." The trial court ruled, therefore, that Owen had proven that the restrictions on his correspondence had violated his constitutional rights.
 
 
 10
 At that point in its opinion, the District Court posed the question "What kind of rights are we talking about?", and concluded that the violation under consideration was merely the denial of "court created procedural due process rights." Having so ruled, the trial court then focused on the Supreme Court's opinion in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977)-a case involving the denial of public school students' procedural due process rights-in order to formulate the damage award. Finding that there was no "basis in the record at all for awarding ... any punitive damages" and that Owen had failed to present proof of actual damages, the court concluded that, "under the teaching of Carey v. Piphus," only nominal damages in the sum of one dollar should be awarded.
 
 
 11
 The District Court was also faced with deciding against whom the judgment should be entered. Ruling that "there is no claim proven here against the defendant Russell E. Lash individually," the court entered judgment solely against Lash as Warden of the Indiana State Prison. Finally, in response to a subsequent motion by Owen as a pro se plaintiff, the District Court refused to award attorney's fees.
 
 
 12
 Dissatisfied with the one dollar judgment, Owen brought this appeal. He argues that the District Court's characterization of the violation at issue as a denial of procedural due process was erroneous and, therefore, that the trial court's decision to award only nominal damages to compensate for this deprivation must be reversed. Owen also contends that the trial court erred in absolving the defendant Lash from individual liability. He asks this Court to enter judgment against the defendant Lash individually, awarding plaintiff-appellant a "fair compensatory award," punitive damages, and attorney's fees.
 
 II.
 
 13
 The linchpin of the District Court's decision was the ruling that the constitutional violation at issue was the denial of Owen's procedural due process rights. A finding that governmental action deprived a citizen of his right to procedural due process differs greatly from a ruling that such action violated an independent substantive right secured by the Constitution. The guarantee of procedural due process[3] places restrictions on the manner in which the government may undertake actions that infringe upon the rights of the citizenry; it imposes no limitations on the ends that such governmental action, accompanied by proper procedures, may achieve. The right to procedural due process " 'raises no impenetrable barrier to the taking of a person's possessions' or liberty, or life. Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1977) (quoting Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972)).
 
 
 14
 Of course, the specification of procedural safeguards that must precede or accompany governmental action may serve as a prime deterrent against malicious and improper conduct. "Moreover, proper procedures will surely eliminate some of the arbitrariness that results, not from malice, but from innocent error." Board of Regents v. Roth, 408 U.S. 564, 591, 92 S.Ct. 2701, 2716, 33 L.Ed.2d 548 (Marshall, J., dissenting.) "For when a person has an opportunity to speak up in his defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of (rights) can be prevented." Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). Yet, despite the fact that the right to procedural due process may have an incidental effect on the substance of the actions undertaken by the government, it is clear that the guarantee of procedural due process merely imposes upon the State a duty to follow a fair process of decision making. Thus, a determination that governmental action violated a citizen's right to procedural due process is merely a condemnation of the procedures that attended the action and not an assessment of the constitutionality or propriety of the action itself.
 
 
 15
 By ruling that "this case in my judgment falls clearly on the side of the establishment of the violation of a procedural rather than a substantive due process," the District Judge of necessity held that the State did not violate Owen's constitutional rights by confiscating his letters and interrupting his correspondence with the outside world for over a year. Rather, according to the District Court's opinion, the only constitutional violation in this case was the State's failure to utilize proper procedures-such as providing notice and an opportunity to be heard-prior to depriving Owen of his correspondence rights.
 
 
 16
 The District Court's ruling that the only right at issue in this case was Owen's right to procedural due process is extremely surprising in light of the history of this lawsuit. Until this appeal, neither party in this case ever mentioned the right to procedural due process. No paper filed in the suit referred to that right until the District Court's decision. And during its initial consideration of Owen's correspondence claims prior to dismissing the claims as barred by res judicata, the District Court itself never once discussed the right to procedural due process. Owen had alleged in his complaint only that he had been deprived of his First and Fourteenth Amendment right to correspond, and not that this deprivation-regardless of its legality-had been accomplished without constitutionally required procedural safeguards.[4] Owen had sought redress only for the denial of his substantive correspondence right-for the restriction upon his freedom to send and receive letters and thereby to communicate with the outside world-and not for the unconstitutional manner in which this restriction had been imposed.
 
 
 17
 The District Court's ruling that the deprivation at issue in this case was objectionable only on procedural due process grounds also conflicts with both the controlling precedent in this Circuit and the law of this case. The controlling precedent in this Circuit was delineated in the en banc decision authored by Judge Pell in Morales v. Schmidt, 494 F.2d 85 (7th Cir. 1974). In that opinion, Judge Pell explained that in order for a restriction on prisoner correspondence not to violate substantive constitutional rights, the "State must show on challenge that such restriction is related both reasonably and necessarily to the advancement of a justifiable purpose of imprisonment." Id. at 87. The ruling of the previous appellate panel in this case-the law of this case-merely followed that en banc decision. Thus, the earlier panel ruled that Owen's complaint had stated a claim for the deprivation of his correspondence rights in violation of the First and Fourteenth Amendments. The panel remanded the case for findings of fact, in conformity with Judge Pell's en banc decision, as to whether the restriction on Owen's correspondence rights was "reasonably and necessarily related to a justifiable purpose of imprisonment." The panel's instructions to the District Court specifying the issues to be addressed on remand-i.e. the nature of the State's countervailing interest and the immunity of the individual defendant-did not afford the District Court the leeway to conclude that, although the State's countervailing interest "did not pass muster," the State had only violated Owen's right to procedural due process.
 
 
 18
 The District Court did not explain its reasons for concluding that the defendants merely violated Owen's procedural due process rights. Rather, in reaching this conclusion, the District Court simply cited the Supreme Court's opinion in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977) as well as this Court's opinion in Konczak v. Tyrrell, 603 F.2d 13 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980), and then stated, "I think we're dealing with the basically court created procedural due process rights."
 
 
 19
 The court's reliance on Carey and Konczak is as puzzling as its ultimate ruling. In Carey, the Supreme Court held that public school students who had proven a denial of procedural due process, but who had failed to prove actual injury, could recover only nominal damages. The Supreme Court in that case was faced only with formulating the proper damage remedy for a proven violation of procedural due process protection.[5] In Konczak, this Court affirmed a jury verdict awarding $12,500 compensatory damages to a couple who had been the victims of an unlawful search and seizure conducted by members of a county sheriff's department. No procedural due process claim was ever raised in Konczak and, unlike in the present case, none was ever considered by the trial court or this Court. The Konczak opinion did reject an argument advanced by the defendants that the plaintiffs were entitled only to nominal damages, distinguishing the nominal damage award in Carey by noting:
 
 
 20
 "(T)he officers charge that under Carey v. Piphus, the Supreme Court requires that actual damages must be proven for every violation of a constitutional right. The defendants misread the case. In Carey v. Piphus the Supreme Court held that where a plaintiff has proven a denial of procedural due process without proving any actual injury, he may only recover nominal damages. The Court, however, distinguished procedural constitutional violations from substantive ones such as those asserted by the plaintiffs here. In any event, we believe the plaintiffs presented sufficient evidence of actual damages in this case." Konczak v. Tyrrell, 603 F.2d, at 17.
 
 
 21
 Thus, neither Carey nor Konczak support the proposition for which they were cited by the District Court in this case, and neither opinion in any way mandates the conclusion that Owen suffered only a violation of procedural due process rights.
 
 
 22
 Having found that the justifications advanced to support the restriction upon Owen's freedom to correspond "had to be rejected," the District Court was required by this Court's previous instruction and by settled law to find that Owen had been deprived of the substantive right to correspond secured by the First and Fourteenth Amendments.III.
 
 
 23
 Another issue that needed to be addressed in analyzing this § 1983 damage claim was the question of which party, if any, should be held responsible for monetary damages. Because actions that violate § 1983 must have been committed "under color of state law," the defendants in § 1983 suits are often employees of government entities. These defendants will frequently be shielded from liability for monetary damages by some form of immunity, and therefore, aggrieved plaintiffs in § 1983 suits may often be limited to securing only injunctive and declaratory relief. Analysis of the immunity question, therefore, may moot the need to address such issues as the proper amount of compensatory damages and the availability of punitive damages.
 
 
 24
 In the present case, the District Court did ultimately decide the question of which of the "two" named defendants-Russell E. Lash individually or Russell E. Lash as the Warden of the Indiana State Prison-should be liable for the monetary damages owed to Owen. The Court's ruling, however, was inconsistent with the Eleventh Amendment and was apparently reached without any consideration of the law governing the immunity of executive officials.
 
 A.
 
 25
 In Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1973), the Supreme Court clearly delineated the restrictions imposed by the Eleventh Amendment[6] on a federal court in awarding an aggrieved plaintiff relief in a § 1983 suit: "In a § 1983 action ... a federal court's remedial power, consistent with the Eleventh Amendment is necessarily limited to prospective injunctive relief, Ex Parte Young (209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714), supra, and may not include a retroactive award which requires the payment of funds from the state treasury, Ford Motor Co. v. Department of Treasury (323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389), supra." 415 U.S., at 677, 94 S.Ct., at 1362. The Supreme Court in Edelman explained that the bar against the award of monetary damages exists, even though a State is not named a party to the action, as long as the funds used to satisfy the judgment will come from the state treasury. Id. at 663, 94 S.Ct. at 1355, see Scheuer v. Rhodes, 416 U.S. 232, 237, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973). "(W)hen the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity" under the Eleventh Amendment. Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); see Carey v. Quern, 588 F.2d 230 (7th Cir. 1978).
 
 
 26
 Five years after Edelman, the Supreme Court reaffirmed that case's holding, quoted above, and expressly rejected the proposition that § 1983 abrogated the States' Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1978). The impropriety of awarding monetary damages in a § 1983 action, to be paid by the State, was so clearly established by Edelman and Quern as to prompt one commentary to declare: "The issue of state liability for damages against the State itself under section 1983 is closed ...." Rushing and Bratcher, Section 1983 Defenses, 14 Urb.Law 149, 162 (1982).
 
 
 27
 Without ever referring to the Eleventh Amendment, the District Court entered judgment against, and ordered nominal monetary damages to be paid by, Russell E. Lash, in his official capacity "as Warden and not individually." Neither party disputes the fact that this damage award must now be satisfied with state funds[7] and that Indiana has not waived its Eleventh Amendment protection; in fact, both sides agree that the decision of the District Court violates the Eleventh Amendment.
 
 
 28
 In attempting to defend the judgment despite the violation of the Eleventh Amendment, counsel for Lash suggests that we find the violation to be "harmless error." We cannot adopt this suggestion for several reasons. First, although a State may waive its Eleventh Amendment immunity, the defense, absent waiver, "partakes of the nature of a jurisdictional bar ...." Edelman v. Jordan, 415 U.S., at 678, 94 S.Ct., at 1363. "The ... Amendment declares a policy and sets forth an explicit limitation on federal judicial power ...." Ford Motor Co. v. Department of Treasury, supra, 323 U.S., at 467, 65 S.Ct., at 352. Second, although this error presently seems "harmless" and will continue to be relatively "harmless" if only nominal damages are awarded in this case, there is at least a possibility, as fully explained below, that the District Court on remand may decide upon a much more substantial compensatory award. Finally, overlooking the error of assessing monetary damages against the State would fail to isolate and clarify the major questions that still remain to be disposed of in this suit: (1) given that Owen has proven a violation of his First and Fourteenth Amendment rights and given that the State of Indiana is immune from paying damages, can Owen collect monetary damages against the only other defendant in the case, Russell E. Lash individually?; and (2) if Owen is entitled to collect damages from Lash as an individual, is Owen limited in this case to recovering the sum of one dollar?
 
 B.
 
 29
 In dismissing the claims against Lash individually, the District Court stated:
 
 
 30
 "First of all, a simple matter, there is no claim proven here against the defendant Russell E. Lash individually. There is none asserted and none proven. And to the extent that Russell E. Lash the defendant is sued in an individual capacity, the case is dismissed in his favor on any such claims. Judgment entered on individual claims in favor of Russell E. Lash and against the plaintiff Richard Owen."
 
 
 31
 Because this ruling is phrased in purely conclusory terms, without any explanation or citation to the record, it is somewhat difficult to discern the exact meaning of the dismissal. Certainly, Owen "asserted a claim" against Lash, who was the Warden of the prison at the time Owen was denied his right to correspond and who was named in the complaint as being the person who was responsible for the enforcement of the prison's correspondence rules.
 
 
 32
 The District Court's isolated and conclusory statement that no claim "was proven" against Lash individually is as confusing as the court's statement that no claim was asserted. The earlier opinion of this court, holding that Owen had stated a claim and remanding for analysis of the State's countervailing interest, combined with the District Court's ruling on remand that the State's asserted justifications had to be rejected, established that Owen's First and Fourteenth Amendment correspondence rights had been violated. The record in this case reveals, not surprisingly, that Warden Lash's signature appears on most of the paperwork relating to the denial of these rights. Given the complaint, the record, and the other judicial rulings in this case, it is hardly possible to read the District Court's decision as holding that Warden Lash was not even partly responsible for the proven deprivation of Owen's rights.[8]
 
 
 33
 It is likely that what the District Court meant in dismissing Lash in his individual capacity and in ruling that no claim was "asserted" or "proven" against Lash individually was that, although Lash's actions contributed to the violation of Owen's rights, Lash undertook these actions in good faith as part of his duties as Warden and, therefore, should not be held personally responsible to pay monetary damages. The law governing § 1983 suits is neither so wooden nor so unjust as to force government officials, who carry out their duties diligently and in good faith, to shoulder the burden of paying monetary damages if their actions are subsequently found to have violated the rights of a citizen. These officials, however, are protected not by their unexplained dismissal from a given lawsuit, but rather, by application of the doctrine of immunity.
 
 
 34
 In Procunier v. Navarette, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1977), the Supreme Court held that a state prison official's exposure to personal liability in a § 1983 suit is controlled by the doctrine of "qualified immunity." Under this doctrine, a state prison official will be immune from having to pay damages unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the (citizen) affected, or (unless) he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury ...." Wood v. Strickland, 420 U.S. 306, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), quoted in Procunier v. Navarette, supra, 434 U.S., at 562, 98 S.Ct., at 859; see Butz v. Economou, 438 U.S. 478, 498-504, 98 S.Ct. 2894, 2906-2909, 57 L.Ed.2d 895 (1977) (tracing the development of and extending the qualified immunity doctrine); Note, Civil Rights Suits Against State and Local Governmental Entities and Officials: Rights of Action, Immunities and Federalism, 53 S.Calif.L.Rev. 945, 1052-1053 (analyzing judicial applications of qualified immunity doctrine).
 
 
 35
 In elaborating on the first part of the qualified immunity standard delineated in Wood v. Strickland, the Supreme Court in Procunier v. Navarette explained that an official is not immune if "the constitutional right allegedly infringed ... was clearly established at the time of (the) challenged conduct, if (he) knew or should have known of that right, and if he knew or should have known that his conduct violated the constitutional norm." Procunier v. Navarette, supra, 434 U.S., at 562, 98 S.Ct., at 859. It is clear that in order to apply this first prong of the qualified immunity test an appellate court must rely on the district court's findings of fact as to: (1) when the violation was committed; (2) whether a given official knew or reasonably should have known about the right at the time the violation was committed; and (3) whether a given official knew or reasonably should have known that his conduct violated the constitutional rights at issue.
 
 
 36
 Although specifically instructed by the previous appellate panel to address the issue of qualified immunity on remand, the District Court failed to examine the question; in fact, the word "immunity" was never mentioned in the District Court's oral opinion. Because the District Court ignored the immunity question and because the Court failed to provide any analysis supporting or explaining the decision to dismiss Lash in his individual capacity, the Court's decision is devoid of the findings of fact, delineated above, necessary to decide whether Lash is immune from personal liability. The case must be remanded once again to the District Court to enable that Court to consider whether Russell E. Lash is protected from personal liability under the doctrine of "qualified immunity" as explained in the Supreme Court's opinion in Procunier v. Navarette, supra, and its progeny in this Circuit. See Lock v. Jenkins, 641 F.2d 488 (7th Cir. 1981) (prison officials immune from award of money damages for unconstitutional use of tear gas and unconstitutional confinement of pretrial detainees); Hayes v. Thompson, 637 F.2d 483 (7th Cir. 1980) (prison officials immune from award of money damages for unconstitutional denial of request for witnesses and failure to furnish adequate statement of reasons in administrative proceeding.)
 
 IV.
 
 37
 Having ruled that only Owen's procedural due process rights had been violated (and having overlooked the Eleventh Amendment ban), the District Court followed the "teachings" of the Supreme Court's opinion in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977), and held that since Owen had failed to present proof of "actual injury," he could only recover nominal damages in the sum of one dollar. Our ruling that Owen has suffered a deprivation of his First and Fourteenth Amendment right to correspond raises a difficult question of first impression in this Circuit: can a plaintiff in a § 1983 action who has proven a deprivation of substantive rights secured by the First and Fourteenth Amendments recover damages, greater than mere nominal damages, in the absence of proof of consequential injury?[9]
 
 
 38
 As noted above, the Supreme Court in Carey held that nominal damages were all that could properly be awarded to public school students who had proven a violation of their right to procedural due process, but who had failed to present proof of "actual injury." In so doing, the Supreme Court reversed a decision of this Court, which had ordered the award of damages "neither so small as to trivialize the right nor so large as to provide a windfall." Carey v. Piphus, 545 F.2d 30, 32 (7th Cir. 1976), rev'd, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977). In reaching its decision, this Court relied on several earlier cases-dealing primarily with voting rights and Fourth Amendment rights-which had based the award of damages in the absence of proof of consequential injury on the theories that: (1) injury could be inferred from the circumstances of the given case; and (2) injury could be "presumed" to exist "as inherent in the nature of the wrong" at issue. See, e.g., Seaton v. Sky Realty Co., 491 F.2d 634 (7th Cir. 1974) ("Humiliation can be inferred from the circumstances" following a discriminatory refusal to lease housing.); Sexton v. Gibbs, 327 F.Supp. 134, 142-43 (N.D.Tex.1970), aff'd, 446 F.2d 904 (5th Cir. 1971), cert. denied, 404 U.S. 1062, 92 S.Ct. 733, 30 L.Ed.2d 751 (1972) (Since "(t)here is no doubt that Plaintiff suffered humiliation, embarrassment and discomfort" from unlawful search, Plaintiff may recover $500.00 despite failure to "claim" or "submit proof" of actual damages.); see also Dellums v. Powell, 566 F.2d 167, 195 (D.C.Cir.), cert. denied, 428 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1977). (Loss of opportunity to express oneself constitutes a deprivation of an intangible First Amendment interest entitling plaintiff to recover "not insignificant" damages.); Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977) (Damages for emotional distress "may be inferred from circumstances."); Tatum v. Morton, 562 F.2d 1279, 1282 (D.C.Cir.1977) ("The right to demonstrate is a significant strand of the cluster of First Amendment rights.... It is in the public interest that there be a reasonably spacious award for denial or curtailment of the right to demonstrate."); Hodge v. Seiler, 558 F.2d 284 (5th Cir. 1977) ("Damage (may) be presumed from the denial of a constitutional right."); Wayne v. Venable, 260 F. 64, 66 (8th Cir. 1919) ("In the eyes of the law (the right to vote) is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of damages is a question peculiarly appropriate for the determination of the jury ....").
 
 
 39
 Rather than overrule this fairly long line of cases awarding damages even in the absence of proof of consequential injury, the Supreme Court in Carey chose to distinguish these cases and expressly to reserve judgment as to their merits. That Court stated clearly:
 
 
 40
 "More importantly, the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another. As we have said, these issues must be considered with reference to the nature of the interests protected by the particular constitutional right in question. For this reason, and without intimating an opinion as to their merits, we do not deem the cases relied upon to be controlling." 435 U.S., at 264-65, 98 S.Ct., at 1052-53 (citation omitted).
 
 
 41
 Since Carey, those courts that have considered the question whether more than nominal damages may be awarded upon proof of a violation of a constitutional right, other than the right to procedural due process, despite the absence of proof of consequential injury, have divided on the issue. In Familias Unidas v. Briscoe, 619 F.2d 391 (5th Cir. 1980), the Court of Appeals for the Fifth Circuit awarded nominal damages to compensate for a deprivation of First Amendment associational rights. The court explained that this conclusion was mandated by the opinion in Carey :
 
 
 42
 "The Supreme Court has made abundantly clear in Carey v. Piphus that private plaintiffs suing for violation of rights pursuant to 42 U.S.C. § 1983 are entitled to compensatory damages only upon proof of actual injury. Mere proof of the violation of a right will not support such award of damages....
 
 
 43
 "The Court in Carey also held, however, that even in the absence of proof of compensable injury, demonstration of a denial of the 'absolute' right to procedural due process required an award of nominal damages not to exceed one dollar. We believe that the rationale of Carey similarly requires an award of nominal damages upon proof of infringement of a fundamental First Amendment liberty." Id. at 402.
 
 
 44
 In contrast to the Fifth Circuit, several courts since Carey have relied on the two theories of awarding damages employed in the pre-Carey cases (discussed above) and have awarded significant damages to compensate for the deprivation of a constitutional right despite the absence of proof of consequential injury. The courts in these cases have readily distinguished Carey by focusing on the nature of the constitutional right at issue.
 
 
 45
 In Herrera v. Valentine, 653 F.2d 1220 (8th Cir. 1981), an Indian woman named Yellow Bird brought a § 1983 action against a city police officer alleging various incidents of mistreatment. At trial, the jury was instructed to award damages for physical harm, emotional and mental suffering, and for the violation of "her substantive constitutional rights to liberty and to due process of law." Id. at 1227. On appeal, the Court of Appeals for the Eighth Circuit held that Yellow Bird was entitled to recover damages, "independent of any recovery for actual physical and emotional injury," for the deprivation of: (1) her Due Process right to be free from the "use of excessive force;" (2) her Due Process right to medical assistance; (3) her Fourth Amendment right to be free from unreasonable arrests and unwarranted intrusions into privacy; and (4) her constitutional right to counsel. The court noted that part of the injury suffered by Yellow Bird was the loss of these rights themselves. "To secure complete satisfaction, damage awards must take account of the intrinsic dimension that envelopes each substantive constitutional right." Id. at 1228. The damages awarded were also held necessary to protect fully the citizenry from the violation of their constitutional rights. "Many substantive constitutional guarantees may be violated without accompanying consequential or actual injury. If consequential injury were the touchstone for substantial compensatory awards, many blatant constitutional violations would remain unredressed." Id. at 1228, n. 7.; see also Note, Damage Awards for Constitutional Torts: A Reconsideration After Carey v. Piphus, 93 Harv.L.Rev. 966, 976-77 & nn. 68-69 (1980) (arguing the inadequacy of, and the lack of logic supporting, a remedial scheme making recovery of damages contingent on proof of actual injury).
 
 
 46
 The court in Herrara rejected the assertion that the decision in Carey controlled the case and mandated that Yellow Bird be awarded merely nominal damages. The court stated that "(t)he holding in Carey was specifically limited to its facts." 653 F.2d at 1228. Relying on the Supreme Court's warning in Carey that the analysis of the proper damage award may vary depending on the nature of the constitutional right at issue, the Court of Appeals in Herrara explained:
 
 
 47
 "Our aim here is simply to distinguish the substantive rights involved in this case from the right that was involved in Carey. The Court in Carey determined that the procedural right at issue there was nothing more than a mechanical process designed to avoid the mistaken or wrongful infringements of other substantive constitutional guarantees. In this case, by contrast, substantive constitutional rights, highly prized in our federal system of government, are clearly at stake."
 
 
 48
 Id. at 1230. Stating that "(i)n our view, Carey presents no bar to the recovery of substantial nonpunitive damages for violations of the substantive rights involved in this case," id. at 1229 n. 8, the court presumed that Yellow Bird had suffered compensable injury and awarded her damages for the violation of her constitutional rights. See also, Williams v. Trans World Airlines, Inc., 660 F.2d 1267, 1272 (8th Cir. 1981) ("(D)amages for emotional harm are to be presumed where there is an infringement of a substantive constitutional right."). See also Halperin v. Kissinger, 606 F.2d 1192, 1207 and n. 100 (D.C.Cir.1979), aff'd in part, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981). (Because the substantive right to be free from unlawful searches was "of a much different character" than the right to procedural due process at issue in Carey, damages should be "inferred from the circumstances" of the case.); Mickens v. Winston, 462 F.Supp. 910, 913 (E.D.Va.1978), aff'd, 609 F.2d 508 (4th Cir. 1979) (Compensatory damages may be awarded without proof of actual injury since "official racial segregation is inherently injurious ...".)
 
 
 49
 Having aired this issue fully and having alerted the District Court as to the existence and scope of the controversy about it, we decline to attempt to resolve the question at this point. As detailed above, this case must be remanded to the District Court for a determination whether defendant Lash, in his individual capacity, is immune from liability for damages. If the trial court concludes on remand that Lash is immune, there will then be no named defendant in this action who may be held liable for monetary damages-regardless of the amount of such damages-and Owen will be denied the recovery of a monetary award. The question of the amount of damages to be awarded to compensate for a violation of First and Fourteenth Amendment protections in the absence of proof of consequential injury may therefore never need to be addressed in this lawsuit. Although the question is likely to be raised once again in this Court at some later date, the Court then facing the issue may have before it different facts and may also have the benefit of the additional precedent and wisdom that often come with the passage of time.[10]V.
 
 
 50
 The District Court's decision to award damages against the State violates the Eleventh Amendment and must be reversed. The case is remanded to the District Court to consider whether defendant Lash, in his individual capacity, is protected from personal liability by the doctrine of "qualified immunity." If the District Court concludes on remand that defendant Lash is not immune, it should then address the question of the appropriate damage award to compensate Owen for the deprivation of substantive constitutional rights in the absence of proof of consequential injury.
 
 
 51
 The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 
 52
 It is so ordered.
 
 
 
 *
 The Honorable Potter Stewart, Justice (Retired), of the Supreme Court of the United States, is sitting by designation
 
 
 **
 Judge Sprecher was present at oral argument but did not participate in the decision of this case because of his illness and subsequent death
 
 
 [1]
 Charles E. Moore, the Assistant Warden of the Indiana State Prison, was originally named as a defendant in this suit. The other parties agreed at the outset of the District Court hearing to dismiss Moore from the suit
 
 
 [2]
 Aikens v. Lash, 371 F.Supp. 482 (N.D.Ind.1974), aff'd, 514 F.2d 55 (7th Cir. 1975), vacated, 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976), was a class action brought by inmates of the Indiana State Prison challenging conditions in the prison
 
 
 [3]
 The guarantee of procedural due process is rooted in the Due Process Clause of the Fourteenth Amendment, which provides: "(N)or shall any State deprive any person of life, liberty, or property, without due process of law ...."
 
 
 [4]
 A single act of depriving a citizen of his right to correspond may simultaneously constitute a violation of substantive constitutional rights and of the right to procedural due process. Because the right to correspond is protected by the First and Fourteenth Amendments, the result of depriving a citizen of this right will violate those substantive guarantees unless the action is justified by sufficiently compelling, countervailing state interests. At the same time, because the interest in corresponding is a "liberty" interest within the meaning of the Fourteenth Amendment, the manner of depriving a citizen of this right could violate the procedural norms embodied in the Due Process Clause. See, e.g., Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1973) (analyzing restrictions on a prisoner's correspondence rights as a violation of both substantive constitutional rights and the right to procedural due process)
 In the present case, however, Owen challenged only the denial of his right to correspond and not the manner in which the decision to impose this restriction was reached.
 
 
 [5]
 The Supreme Court in Carey expressly noted:
 "In addition to the procedural due process claim, the complaint alleged that enforcement of the 'no earring' rule violated his right to freedom of expression under the First and Fourteenth Amendments. Neither court below passed on this claim, nor do we."
 435 U.S., at 250-1, n. 3, 98 S.Ct., at 1045, n. 3.
 
 
 [6]
 The Eleventh Amendment to the Constitution of the United States provides in part:
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...."
 
 
 [7]
 Because the trial court failed to focus on the Eleventh Amendment issue, there is no evidence in the record as to whether the Indiana State Prison is fully supported by the State, and, therefore, whether this damage award must be paid from the state treasury. However, since both sides concede that the damage award violates the Eleventh Amendment, there is no reason to assume that the state prison is not fully funded by the State. This issue can be addressed on remand if it appears that the question of the prison's source of funding is in dispute
 
 
 [8]
 Despite the contrary findings and evidence in the record, it is at least conceivable that the District Court's conclusion that no claim "was proven" against Lash was actually a factual finding that Lash was in no way involved in or responsible-by law or in fact-for the decision to prevent Owen from corresponding with the three people in question. This issue can be addressed further on remand if there appears to be a genuine controversy about it
 
 
 [9]
 The term "consequential injury" seems preferable to "actual injury" because, depending on the proper answer to the question expressly reserved in this opinion, see infra p. 659, the violation of the substantive constitutional right might itself constitute "actual injury."
 
 
 [10]
 For similar reasons, we decline to reach the question, raised by Owen's counsel, whether a pro se litigant may recover attorney's fees in a § 1983 action. Those courts that have considered the issue to date have answered this question in the negative. Cofield v. City of Atlanta, 648 F.2d 986, 988 (5th Cir. 1981); Lovell v. Snow, 637 F.2d 170, 171 (1st Cir. 1981); Davis v. Parratt, 608 F.2d 717 (8th Cir. 1979). The Civil Rights Fee Awards Act of 1976, 42 U.S.C. § 1988, permits a court to award the "prevailing party" a reasonable attorney's fee as part of the costs of an action to enforce a provision of, inter alia, § 1983. Because no determination of which party is the "prevailing party" in this suit can be made until after the remand, the issue of a pro se plaintiff's ability to recover attorney's fees in a § 1983 action may never need to be addressed in this lawsuit
 Finally, we need not address Owen's claim for punitive damages. Obviously, if Owen is barred from recovering compensatory damages, he will similarly be unable to collect punitive damages. Moreover, the factual findings which must be made on remand to answer properly the question of whether Lash is immune from personal liability will greatly clarify the issue of the availability of punitive damages.