Hazel HILL, Appellant–Petitioner,

v.

INDIANA BOARD OF PUBLIC WELFARE, et al., Appellees–Respondents.

No. 71A04–9303–CV–96.

Court of Appeals of Indiana, Fourth District.

May 9, 1994.

Kent Hull, Legal Services Program of Northern Indiana, Inc., South Bend, for appellant.

Pamela Carter, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees.

CHEZEM, Judge.

## Case Summary

Appellant-petitioner Hazel Hill ("Hill") appeals the trial court's affirmation of the Indiana Board of Public Welfare's ("agency") determination that she owed the agency $1,387.00 due to overpayment of food stamp benefits. We affirm.

## Issues

Hill presents four issues for review:

I. Whether the agency's notice of overissuance of food stamp benefits gave Hill adequate procedural due process protections.

II. Whether the error resulting in the overissuance of food stamp benefits was properly categorized as inadvertent household error as defined in 7 C.F.R. § 273.-18(a)(1).

III. Whether the agency's refusal to compromise the overissuance claim against Hill is supported by 7 C.F.R. § 273.(g)(4).

IV. Whether the agency properly collected the overissuance from Hill while also considering the possibility of collection from other household members.

## Facts and Procedural History

Hill received a $1,387.00 overpayment of food stamp benefits made to her between December of 1986, and November of 1988. The overpayment was due to Hill's failure to report her daughter's employment earnings and her son's lump sum Social Security payment. The agency notified Hill of its overpayment via notices and repayment agreements dated January 24, 1989, and February 24, 1989. Hill took no action on the notices and did not sign a repayment agreement and her benefits were reduced without further notice. Hill then requested a fair hearing. An administrative hearing was conducted on

May 17, 1989, and the Administrative Law Judge (ALJ) sustained the county agency's collection of the overissuance. Both the state agency board and the trial court affirmed the ALJ's decision.[1]

## Discussion and Decision

The Food Stamp Act, 7 U.S.C. §§ 2011 *et seq.*, established a federally-funded, state-administered program to improve nutrition in the diets of low-income households. 7 U.S.C. § 2011. In carrying out its duties under the Food Stamp Act, a state agency must adhere to regulations promulgated by the Secretary of the U.S. Department of Agriculture. 7 U.S.C. § 2013(c).

■ Federal regulations provide for the implementation of a system wherein state agencies issue food stamp coupons to "households," which may consist of single or multiple individuals. 7 C.F.R. § 273.1(a). If a household receives benefits in excess of its entitlement (an "overissuance"), the state agency is required to established a claim against the household. 7 C.F.R. § 273.18(a). Further, the agency must issue notice to the household of the action to recoup the overissuance. 7 C.F.R. § 273.18(d)(3).

## I. Whether the agency's notice of overissuance of food stamp benefits gave Hill adequate due process protections.

Hill does not contest the fact that she received an overissuance of food stamps. However, she argues that the notice of overissuance was inadequate because it did not explain the reasons for the proposed reduction in benefits or the factors used to calculate and classify the error. Hill further contends that adequate notice should also include an explanation of Hill's right to contest the agency's action and the consequences of the available remedies. Additionally, the repayment agreement included an "acceleration clause" which purported to make the entire debt due immediately upon failure to make periodic payments, contrary to 7 C.F.R. § 273.18.

---

1. We heard oral arguments on March 24, 1994.

The agency contends that the notice conformed with the requirements of 7 C.F.R. § 273.18(d)(3) and that it contained sufficient information from which to assess the accuracy of the agency's decision and inform Hill of her options. The agency concedes that part of the repayment agreement does conflict with 7 C.F.R. § 273.18(g)(2)(ii), which states that if a household fails to make a scheduled payment, the household is entitled to notice advising of the missed payment and offering to renegotiate the schedule. However, the agency maintains it is irrelevant to this case because Hill did not sign a repayment agreement.

 Under the Administrative Adjudication Act, Ind.Code § 4–21.5–5–14, this court's function in reviewing administrative action is limited. We will not reweigh the evidence or judge the credibility of witnesses and must accept the facts as found by the administrative body. *Peabody Coal Company v. Indiana Department of Natural Resources* (1992), Ind.App., 606 N.E.2d 1306, 1308. Similarly, an administrative agency's interpretation of a statute that the agency is charged with enforcing is entitled to great weight. *Id.* However, we need not accord such deference to an agency's legal conclusions if they are contrary to law. *Id.*

Section 273.18(d)(3) requires state agencies to develop a written demand letter for initiating collection of overissuances. The regulations require a demand letter to include a laundry list of information, including informing the household of the amount owed, the reason for the claim, the period of time the claim covers, any offset which reduces the claim, and how the household may pay the claim. 7 C.F.R. § 273.18(d)(3)(i). Additionally, the letter must notify the household that it may request a fair hearing on the amount of the claim. *Id; Atkins v. Block,* 472 U.S. 115, 124–25, 105 S.Ct. 2520, 2526–27, 86 L.Ed.2d 81 (1985). The letter must also advise the household of the availability of any individual or organization which provides free legal representation. 7 C.F.R. § 273.-18(d)(3)(ii). Further, the letter must inform

the household of the length of time it has to decide on a method of repayment and inform the agency of its decision, and that its allotment will automatically be reduced if the household fails to agree to make restitution. 7 C.F.R. § 273.18(d)(3)(iii). The demand letter must inform the household of the state agency's right to request renegotiation of any agreed upon repayment schedule in the event the household's economic circumstances change. 7 C.F.R. § 273.18(d)(3)(vii). Finally, the demand letter must provide a space for the household to indicate its preferred method of repayment and for the signature of a household member. 7 C.F.R. § 273.-18(d)(3)(viii).

 The purpose of such a notice under the due process clause is to apprise a household of an impending action, inform it about options and permit it adequate preparation for a hearing. *See Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978). Despite the fact that the right to procedural due process may have an incidental effect on the substance of the actions undertaken by the government agency, the procedural due process guarantee merely imposes upon the state a duty to follow a fair process of decision-making. *Owen v. Lash,* 682 F.2d 648, 652 (7th Cir., 1982) (retired Justice Potter Stewart sitting by designation). Therefore, any determination that government action violated procedural due process rights is a condemnation of the procedures employed and not an assessment of the propriety of the action itself. *Id.* We find the procedure and notice outlined by 7 C.F.R. § 273.18 adequate to preserve Hill's procedural due process rights.

 In the instant case, the agency's notice of food stamp overissuance and the enclosed repayment agreement contained all of the elements contained in the regulations.[2] The letter contained the total amount of the overissuance, with a monthly breakdown which explained the time period involved and how the agency arrived at the figure and listed any applicable offset. It also listed

2. We believe these two documents should be taken together to constitute the notice given to Hill. Not only were the two documents sent together, but the notice refers to the repayment agreement, thereby incorporating the document by reference.

repayment options, provided a form for Hill's response and informed her of the deadline for response, explained that she could request a fair hearing and listed the telephone number for free legal advise. Finally, it informed Hill that the agency would automatically reduce future food stamp allotments if she did not respond to the notice. Therefore, we also reject Hill's contentions that the notice did not explain the reasons for the proposed reduction or the factors used to calculate and classify the error.

■ However, as the agency concedes, the notice contained an error regarding Hill's minimum monthly repayment. The notice and repayment agreement incorrectly listed Hill's minimum monthly repayment as $38.53. The documents explained that the amount calculated was the higher of $10 or 10% of Hill's food stamp allotment. However, after the fair hearing held at Hill's request, the monthly repayment was adjusted to $10 per month. Although the notice contained an error, it explained how the figure was reached in accordance with the regulations so that Hill could easily do the math and find that the notice's figure was incorrect. Moreover, the fair hearing procedure in which Hill participated is designed to rectify such errors. The error did not make the notice inadequate.

■ The agency also admits that the repayment agreement contained an acceleration clause in violation of 7 C.F.R. § 273.-18(g)(2), which provides that if a household fails to make a payment as established by a repayment agreement, the household is entitled to a notice advising it of the missed payment and offering the opportunity to renegotiate the agreement. Hill contends that this error denied her due process because it misinformed her of her rights. Although we agree that it was error to include the acceleration clause in the repayment agreement because it misstated Hill's rights regarding repayment, Hill was not harmed. She did not sign the repayment agreement and the agency did not attempt to collect the entire amount of the repayment. Instead, Hill requested and received a fair hearing. Even though the acceleration clause had the potential to damage Hill through misinformation,

we can not merely look at the document in a vacuum and ignore the fact that no harm actually occurred. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977). The error does not require reversal.

■ Finally, Hill argues that the notice did not contain enough information to adequately explain her right to a fair hearing. Regarding the issue of a fair hearing, the agency's letter said:

> If you do not agree with our action, you may ask for a fair hearing. At the hearing you will have a chance to explain why you think our determination was wrong. A hearing officer will decide what is correct. To request a fair hearing or, if you have any questions, call the Food Stamp Office at 236–5382. If you want a hearing, you must ask for it by the 90th day from the date this notice was sent. FOR INFORMATION ABOUT FREE LEGAL ADVICE, YOU MAY CALL 234–8121. This is the Legal Services Organization telephone number for this county. (emphasis in original)

We agree with Hill that it is the better practice for a notice to more fully explain the ramifications of the options available to a household, such as, the nature and scope of a fair hearing, and to comply with the requirement to notify recipients that benefits will continue at the same rate pending administrative resolution of the dispute. 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(k). Further, the agency's notice could confuse a household about the options available because the "fair hearing" paragraph quoted above is immediately preceded by admonishments that "you MUST sign the attached Repayment Agreement." (emphasis in original) This contradiction could cause a misinterpretation as to a household's right to decide not to sign a repayment agreement and instead request a fair hearing.

■ However, this appears not to have been the case with Hill. She did not sign the repayment agreement and opted instead to get an attorney and request a fair hearing. This situation gives credence to the words of Justice Stevens, who wrote that government (in that case, Congress)

can presume that such a notice relative to a matter as important as a change in a household's food-stamp allotment would prompt an appropriate inquiry if it is not fully understood. The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny.

*Atkins,* 472 U.S. at 131, 105 S.Ct. at 2530.

Although the record is silent on this point, it is reasonable to assume from the course of events that Hill read the notice, understood she had the right to a hearing and exercised that option. Therefore, because Hill was not harmed by the omission, the agency's failure to explain what constitutes a fair hearing and the continuation of benefits pending the outcome was not reversible error.

**II. Whether the error resulting in the overissuance of food stamp benefits was properly categorized as inadvertent household error as defined in 7 C.F.R. § 273(a)(1).**

Hill maintains that the ALJ finding of "household error" was not supported by substantial evidence and that hearsay evidence was presented. Hill claims she got conflicting advice from an agency worker and did not know that she was required to report her children's income. The agency responds that the evidence supports the finding. Further, the agency points out that because Hill did not object to the admission of hearsay evidence at the hearing, she waived the issue. We agree.

The use of hearsay evidence at an administrative hearing must be objected to at the hearing or the objection is waived. *Ram Broadcasting of Indiana, Inc. v. MCI Air Signal of Indiana* (1985), Ind.App., 484 N.E.2d 26. Because Hill did not object to the use of Hill's FSD 47 Form (used for periodic recertification for benefits) at the hearing, she can not now argue that it was improper. Moreover, the agency form was not the sole basis for the ALJ's decision.

Waiver notwithstanding, we must decline Hill's invitation to reweigh the evidence. The instant case falls squarely into an example of inadvertent household error contained within the regulation. An inadvertent household error is "[a] misunderstanding or unintended error on the part of the household." 7 C.F.R. 273.18(a)(1)(i). Hill did not present any evidence of agency error. Rather, she admitted that she did not understand that the income in question should have been included as household income. Hill testified that she did not report her daughter's earnings and her son's Social Security payment because she (Hill) did not think it was necessary, as it was not her money. The ALJ correctly categorized the overissuance as an inadvertent household error.

**III. Whether the agency's refusal to compromise the overissuance claim against Hill is supported by 7 C.F.R. § 273.(g)(4).**

Hill contends that the ALJ should have followed other similar ALJ findings which would have "substantiated the appropriateness of compromise" in Hill's overissuance claim. Hill points to her mistake of not including her daughter's income and her son's social security payment, the fact that she would not be able to repay the amount within three years, and the fact that Hill also receives Supplemental Security Income, in support of her position. She claims that the ALJ failed to properly weigh the evidence to determine whether the situation merited compromise of the claim.

The agency refused to compromise the claim because it might be able to recover some of the overissuance from Hill's children. The agency argues that the regulation, 7 C.F.R. § 273.18(g)(4), says that if a claim can not be liquidated in three years, the agency *may* compromise the claim. We agree.

The regulation, 7 C.F.R. § 273.18(g)(4) reads:

> If the full or remaining amount of the claim cannot be liquidated in 3 years, the State agency may compromise the claim by reducing it to an amount that will allow the household to make restitution within 3 years.

The regulation uses the permissive word "may" and not the mandatory words "shall" or "must," meaning that com-

promise is merely an option available to the agency. Further, we reject Hill's argument that the ALJ should have followed a prior ALJ decision which required compromise by the agency. As Hill concedes, an ALJ is not bound by a prior ALJ decision. Each ALJ decision addresses itself to a unique situation. In the instant case, the ALJ determined that, "there was no evidence to substantiate the appropriateness of compromising the appellant's claim." Additionally, the regulations do not indicate that pursuing collection from one household member precludes attempting collection from other household members. Finally, we must decline Hill's invitation to reweigh the evidence. The ALJ acted properly, as compromise was not required.

## IV. Whether the agency properly continued collection of the overissuance from Hill while also considering the possibility of collection from other household members.

Hill maintains that the agency should not be allowed to refuse to compromise the claim because of the possibility of collection from Hill's children, but then refuse to take any action to pursue the children as Hill requested. Hill maintains that the agency's actions are arbitrary and capricious.

The agency points to regulations which provide for the agency's course of action. 7 C.F.R. § 273.18(a) provides that all adult household members are jointly and severally liable for the value of any overissuance of benefits to the household. The ALJ properly concluded that although the agency is authorized to pursue collection from Hill's son or daughter, it is also authorized to continue pursuing collection from Hill. At the time of the administrative hearing, the agency was in the process of deciding whether it was feasible to seek recoupment from Hill's daughter. Until that decision was made, the regulations establish that continued pursuit of the claim from Hill was appropriate.

Affirmed.

HOFFMAN, J., concurs.

FRIEDLANDER, J., concurring in result with separate opinion.

FRIEDLANDER, Judge, concurring in result.

While I agree that Hill did not incur any harm as a result of the defective notice sent by the Indiana Board of Public Welfare (the agency), it is apparent that the agency should discontinue its practice of including an acceleration clause in its repayment agreement. As the majority aptly points out, and as the agency concedes, this clause is in direct contravention of 7 C.F.R. § 273.18(g)(2).

The agency also should revise the form of the notice it sends to food stamp recipients. The current form of notice fails to provide adequate information to the recipient regarding the nature and scope of a fair hearing. Further, it does not contain benefit rate information as is required by 7 U.S.C. § 2020(e)(10) and 7 C.F.R. § 273.15(k). *See maj. op.* at 356–57.

Even more disturbing is the "must sign" provision which is immediately followed by the "fair hearing" paragraph of the notice. This is confusing and, as the majority observes, such a contradiction may cause a misinterpretation as to a recipient's right to decide not to sign the repayment provision and instead request a fair hearing. *See maj. op.* at 356–57.

Because there is nothing in the record indicating that Hill was harmed by the confusing provisions, I agree that the agency's failure to make further clarification in its notice regarding the continuation of benefits pending the outcome of the hearing and the lack of explanation as to what constitutes a "fair hearing" does not, in this instance, constitute reversible error.

I concur in the result reached by the majority.